UTASSY, *Appellant*, v. GIEDINGHAGEN.

Division Two, December 23, 1895.

| 132 | 53 |
| 134 | 581 |
| 132 | 53 |
| d79a | 206 |
| 132 | 53 |
| 158 | 190 |
| 132 | 53 |
| 87a | 433 |

1. **Practice**: DEMURRER, OVERRULING OF: FINDING FOR DEFENDANT. Where the trial court, in an action of ejectment, overruled a demurrer to plaintiff's evidence, but subsequently found for defendant, although the latter offered no evidence, the appellate court will consider the case as if the demurrer had been sustained and will determine whether plaintiff's evidence made out a *prima facie* case.

2. **Aliens, Capacity of to Inherit.** In the absence of statutory authority an alien possesses no inheritable blood.

3. **Ejectment**: PRACTICE: PLEADING: ESTOPPEL. Where plaintiff in ejectment pleads his source of title, he can not, upon the trial, show that he derived title from a source other than that pleaded.

4. **Alien**: INHERITANCE: EJECTMENT: PRACTICE. A resident alien entered land in this state, and died in possession leaving children who were residents of this state, and the plaintiff who was a nonresident child. At the time of the father's death only resident aliens could inherit land. The resident children died intestate without issue, the last one dying after the passage of the act of 1872 (Laws, p. 79) empowering all aliens to inherit land. *Held*, that the land descended to plaintiff and that she was entitled to recover in ejectment, no evidence having been offered to show the character of defendant's occupation or the length of time he had been in possesssion.

Utassy v. Giedinghagen.

*Appeal from Gasconade Circuit Court.*—Hon. Rudolph Hirzel, Judge.

Reversed and remanded.

*Robert Walker* for appellant.

Plaintiff, as child and heir of A. W. Beyse, was entitled to recover. No issue over the question of alienage was made by the pleadings. Defendant, therefore, can not question the title of plaintiff on account of alienage. *State v. Killian,* 51 Mo. 80; *Burke v. Adams,* 80 Mo. 504. The title of an alien is not subject to collateral attack. Our law of escheats always contemplated a judgment of office found before there could be escheat and vesting of title in the state. 1 Sharswood & Budd's Leading Cases in Am. Law of Real Property, p. 500; R. S. 1845, chap. 58, secs. 10-18; R. S. 1889, secs. 4806-4816. Assuming, however, that upon the death of A. W. Beyse plaintiff could not take by inheritance, the descent, then, would have been cast upon Oscar, Louisa, and Augusta Beyse, the children of the ancestor residing upon the land, and in this state. In any event, there was no escheat to the state. 1 Sharswood & Budd's Leading Cases in Am. Law of Real Property, p. 503; R. S. 1845, chap. 6, p. 113; *Burke v. Adams,* 80 Mo. 504; *Sullivan v. Burnett,* U. S. 334. And plaintiff's husband having declared his intention to become a citizen of the United States in 1857, and having been fully naturalized in 1865, the descent upon the deaths of Augusta Beyse in 1862, and of Oscar Beyse in 1876, would have been cast upon the plaintiff. In any event, there should have been judgment for plaintiff. R. S. U. S. 1878, sec. 1994; 10 Stat. U. S., p. 604; W. S. of 1872, chap. 5, p. 133; *Burke v. Adams,* 80 Mo. 504. Plaintiff's father was a resident

of Missouri when he entered the land; was therefore capable of holding the land, and taking or transmitting the same by descent at all times thereafter. The reasons for precluding aliens from holding lands do not exist in this cause. R. S. 1845, p. 113; 1 Sharswood & Budd's Leading Cases on Am. Law of Real Property, p. 501; 5 Am. and Eng. Encyclopedia of Law, p. 863. The replication of plaintiff contained no admission of adverse possession by defendant, and defendant, if desirous to avail himself of the defense of adverse possession, was required to prove the same. *Ledbetter v. Ledbetter*, 88 Mo. 60; *Long v. Long*, 79 Mo. 644. Even if there had been the adverse possession as contended by the defendant, the same could not have affected the plaintiff, since she could not bring her suit until after the death of her husband, Julius Utassy. She brought her suit in time. *Dyer v. Wittler*, 89 Mo. 81.

*I. W. Boulware* for respondent.

(1) An alien is one born out of the jurisdiction of the United States, subject to some foreign power, and who has never been naturalized under the constitution or laws of the United States or any of them. Coke-Litt., p. 128 b; 2 Blackstone Com. 372; Anderson's Dictionary, p. 47; 2 Kent Com. 50; 1 Am. and Eng. Encyclopedia, p. 457, and note. (2) By the common law an alien can not acquire real property by descent— he having not inheritable blood. 2 Blackstone Com. 249; 2 Kent Com. 54; *Fairfax v. Hunter*, 7 Cranch, 602; *Lick v. Stockdale*, 18 Cal. 219; *Farrar v. Dean*, 24 Mo. 16; 1 Am. and Eng. Encyclopedia of Law, p. 460; *Harvey v. Donahoe*, 97 Mo. 141; *Suhrs v. Eimer*, 80 N. Y. 171; 1 Black. Com. 372, 373. (3) Beyse being an alien at the time of his death, his real estate instantly and of necessity escheated and vested in the

state, as the freehold could not be kept in abeyance and there being no one capable of inheriting. *Farrar v. Dean*, 24 Mo. 16, and authorities cited; 2 Kent Com. 54–61; *Crane v. Ruder*, 21 Mich. 24; 1 Am. and Eng. Encyclopedia of Law, p. 459, and note pp. 460, 461; Statutes of Mo. 1845, p. 113. (4) Beyse at the time he entered the lands in 1852 was an alien nonresident and had not made his declaration of intention to become a citizen. R. S. 1845, p. 113. (5) Plaintiff in 1852, at the time of the death of her father (through whom she claims the lands by descent), was a nonresident alien; was the wife of a nonresident alien, who had never made a declaration of intention to become a citizen, hence, she did not, nor could not, acquire title to the lands by descent. (6) At no time did plaintiff's husband have any right or interest in said premises by curtesy or otherwise. In 1852 he was a nonresident alien; had not made declaration of intention to become a citizen, hence could acquire title to no lands in this state. (7) Being unable to hold lands in this state in his own right, he could not acquire or hold lands by or through his wife. (8) Neither the plaintiff nor those under whom she claims was possessed of the premises in question within forty years next before the commencement of this suit, but on the contrary, defendant and those under whom he claims had been in the continuous, open, notorious, adverse possession of said premises under color of title for more than thirty-five years next before the institution of this suit. Statutes 1889, page 1586, sections 6764 and 6767. (9) Under act of February 2, 1847 (which has been the law in this state since that date), limitations for the first time in this state ran against a person who was under the disability of coverture when the cause of action accrued; since the enactment of such statute, twenty-four years has been a full and complete bar.

Laws of Missouri, 1847, page 94. (10) The decisions of the courts of the state have not been uniform nor altogether harmonious in defining, construing, and applying this statute. Most of the opinions were by a divided court. *Valle v. Obenhause*, 62 Mo. 81; *Dyer v. Brannock*, 2 Mo. App. 432; *Dyer v. Brannock*, 66 Mo. 391; *Dyer v. Wittler*, 89 Mo. 81; *Dyer v. Wittler*, 14 Mo. App. 52; *Bradley v. Railroad*, 91 Mo. 493. The opinion in *Valle v. Obenhause*, clearly and distinctly states the law.

BURGESS, J.—Ejectment for a tract of two hundred and forty acres of land in Gasconade county. The petition is in the usual form. The answer, after denying each and every allegation in the petition, pleads by way of special defense the statute of limitations.

Plaintiff made reply to defendant's answer, denying each and every allegation therein. And then replying further alleges, that she became the owner in fee simple of the land sued for on the thirteenth day of August, 1852, through inheritance from her father, Augustus W. Beyse, who died on said date, seized and possessed of and the owner of said premises; that on said thirteenth day of August, 1852, and for several years prior thereto, she was married, and was the wife of Julius Utassy, and that there was issue born alive of such marriage prior to said August 13, 1852, and also subsequent thereto; and that such marriage continued, and that plaintiff remained the wife of said Julius Utassy during all the years from said thirteenth day of August, 1852, and prior thereto, until the twenty-sixth day of July, 1892, at which last mentioned date the said Julius Utassy died, and plaintiff's said marriage thereby dissolved; that plaintiff is the sole surviving

heir of said Augustus W. Beyse, and through such inheritance claims the premises.

At the close of plaintiff's evidence defendant asked an instruction, in the nature of a demurrer thereto, in which the court was asked to declare the law to be, that under the evidence and the law the plaintiff could not recover, and the verdict must be for defendant, which was refused. Defendant declining to offer any evidence, the court took the case under advisement, and subsequently rendered judgment for defendant, from which plaintiff appealed.

No declaration of law was asked or given other than as stated.

The court in overruling the demurrer to plaintiff's evidence in effect held that she had made out a *prima facie* case. Its subsequent action, however, in finding for defendant was a reversal of its former ruling without giving plaintiff a chance to ask declarations of law presenting her theory of the case. We must, therefore, consider the case as if the demurrer to the evidence had been sustained, and from that standpoint determine whether or not plaintiff's evidence showed *prima facie* that she was entitled to recover; if so, then there was error in sustaining the demurrer.

The evidence tended to show defendant's possession of the land at the time of the institution of the suit; its entry by Augustus W. Beyse, plaintiff's father, under whom she claims title by inheritance, at the United States land office in the city of St. Louis on the eighteenth day of July, 1852; that Beyse in the same month that he entered the land moved onto it with his wife and three of his children, viz.: Oscar, Louisa, and Augusta, and that he died in August next thereafter; that he left a widow and five children, three of whom, viz.: Oscar, Ignatz, and plaintiff, were children by a former marriage, and Louisa and Augusta were chil-

dren of the last marriage; that plaintiff's brother Ignatz was never in this state and died in June, 1872, without issue; that after Augustus W. Beyse's death his widow and three of his children, Oscar, Louisa, and Augusta, left the land and moved to St. Louis, where Louisa in the year of 1853 died, single and unmarried, at about the age of fourteen years. Augusta died in 1862 in Hungary, Austria, without issue, Oscar died in San Francisco, California, in 1876, single and unmarried, without leaving issue.

Plaintiff was married to one Julius Utassy on September 28, 1847, in Austria, with whom she continued to live as his wife until his death which occurred July 26, 1892. Julius, plaintiff's husband, declared his intention of becoming a citizen of the United States on the twenty-seventh day of March, 1857, and was fully naturalized as such citizen on the second day of June, 1865.

It was not until 1890 (vol. 1, p. 697, Ter. Laws, 1820) that the disability of an alien to acquire land in Missouri by purchase, devise, and descent was removed. By that enactment, the disability of aliens in this respect was removed as to all aliens residing in the United States or territories who had filed with the proper officers declarations of their intention to become citizens. By the Revised Statutes of 1835, page 66, the law was extended so that by its provisions aliens, resident in this state, were made capable of acquiring real estate in this state by descent, or purchase, and of alienating the same, and incurring like duties and liabilities in relation thereto as if they were citizens of the United States. The privilege of aliens was again enlarged by the statutes of 1845, so as to give them the further right of "holding" real estate (R. S. 1845, p. 113).

The statute thus remained at the time of the death

of plaintiff's father in August, 1852, at which time she was an alien residing in another state and by reason of her alienage could not have acquired any interest in the land from her father by descent. In the absence of statutory enactment, she being an alien, she had no inheritable blood. *Farrar v. Dean*, 24 Mo. 16; 2 Kent's Com. 54. It thus seems clear that she acquired no interest in the land by inheritance directly from her father.

But it is contended by plaintiff that, even though she could not inherit from her father because of the fact that at the time of his death and descent cast she was an alien, the land descended to her brother Oscar, and sisters Louisa and Augusta, who resided with their father on the land; and, as they have all since died without issue, she, being their next of kin, inherited the land from them.

A sufficient answer to this contention would be, that plaintiff, in her replication to defendant's answer, expressly avers that she inherited the land from her father, and, while it was not necessary for her to plead her title, that as she chose to do so she is bound by her pleading and will not be allowed to show that she derived title from any other source than as therein alleged.

It seems clear, however, that Oscar, Louisa, and Augusta inherited the land from their father, subject to the dower right of the widow, as the other children were at the time of their father's death incapable of inheriting on account of their alienage, and being non-residents of this state. Then when Louisa died in 1853, in St. Louis, Missouri, her interest in the land descended to her mother, sister Augusta, and her half-brother Oscar, they all being residents of the state at that time, Oscar taking just one half as much as either of the others. Augusta, it seems, returned to Hungary

in 1862 with her mother and died there during that year. Whether they returned to that country with the intention of making it their future home or not does not appear. If for that purpose, all of Augusta's interest in the land upon her death descended to her half-brother Oscar, he still being a resident of this state, and the only one capable of inheriting from her, her mother, half-brother Ignatz, and plaintiff, being not only aliens but nonresidents of this state, and her other sister, and half-sisters being dead. R. S. 1855, 186.

This leaves the legal title in Oscar, with the exception of the interest which his stepmother inherited from her daughter Louisa, who died in St. Louis, Missouri, in 1853, while they were both residents of this state. It is not shown whether or not the wife of Augustus W. Beyse was living at the time of the commencement of this suit.

In 1872, the legislature removed all obstacles in the way to aliens acquiring real estate in this state by enacting that: "Aliens shall be capable of acquiring, by purchase, devise or descent, real estate in this state, and of holding, devising, or alienating the same, and shall incur the like duties and liabilities in relation thereto as if they were citizens of the United States and residents of this state." Laws, 1871–2, p. 79. So that, when Oscar died in 1876, his interest in the land descended to plaintiff, she being his sister, and only legal heir.

It does not appear that plaintiff was ever a resident of this state. On the contrary her place of residence is inferentially, at least, fixed at Jo Daviess county, Illinois, from the fact that her husband took out his naturalization papers in that county, on June 2, 1865, which must of necessity have been taken out in the county of his residence, and the presumption must be indulged that plaintiff resided with him.

As there was no evidence tending to show the length of time the land had been occupied by defendant before the commencement of this suit, or whether adversely or otherwise to plaintiff and those under whom she claims title, we will not undertake to express our views upon the question of the statute of limitations.

Our conclusion is that plaintiff made out a *prima facie* case, which in the absence of countervailing evidence entitled her to recover, and that the court committed error in adversely ruling. The judgment is reversed, and the cause remanded. GANTT, P. J., and SHERWOOD, J., concur.