C. P. KENNEY, Appellant, v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Respondent.

St. Louis Court of Appeals, February 21, 1899.

Practice, Trial: VERDICT. Verdicts are not required to be in any particular form; but they must be certain, positive and free from ambiguity, show what the jury intended and be responsive to the issues. Held, that, in the case at bar, the verdict of the jury was uncertain and insufficient and should have been set aside.

*Appeal from the McDonald Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED AND REMANDED.

JOHN B. CHRISTENSEN for appellant.

Where the evidence in support of plaintiffs case is, if believed, sufficient to make out his case, and is clear, consistent with itself, delivered by unimpeached witnesses, and no circumstance is developed tending to cast suspicion upon it, and no substantial countervailing evidence by the other party, if the jury nevertheless disregard it and return a verdict against it, it will be the duty of the appellate court to set it aside, as being the result of manifest mistake. Lionberger v. Pohlman, 16 Mo.App. 392; Rottmann v.Pohlmann, 28 Mo. App. 399; Borgraefe v. Knights of Honor, 22 Mo. App. 127, loc. cit. 148. Where the preponderance of the evidence against the verdict in an action at law is so strong as to raise the presumption of prejudice, corruption, or gross ignorance on the part of the jury, a new trial will be granted on appeal, and this rule applies to all cases where the verdict is against the weight and the entire current of the testimony. Friesz v. Fallon, 24 Mo. App. 439; Taylor v. Fox, 16 Mo. App. 527; Walton v. Railway, 49 Mo. App.

620, and cases cited; Claybaugh v. Railroad, 56 Mo. App. 636.

TRIMBLE & BRALEY, JOHN A. EATON, J. W. BRUNK and DUDLEY W. EATON for respondent.

As established by the plaintiff's evidence, the animals in controversy in this case were killed at a point clearly within the switch limits of the town of Madge, and at a point where the defendant was not by law required to fence. This issue was properly submitted to the jury under the evidence, and in the instructions; and upon this evidence and under the instructions of the court the jury found for the defendant. And this court should not disturb the verdict. Jennings v. Railroad, 37 Mo. App. 561; Pearson v. Railroad, 33 Mo. App. 543; Lloyd v. Railroad, 49 Mo. 199; Swearingen v. Railroad, 64 Mo. 73; Kneadle v. Railroad, 19 Am. & Eng. R. R. Cases, 568; Allen v. Railroad, 5 Am. & Eng. R. R. Cases, 620, and cases cited. In this connection it makes no difference whether or not the stock was killed outside of the limits of the town, when it is clearly shown that the switches and switch limits in question were used in the transaction of the business at Madge. Jennings v. Railroad, *supra.* The fencing of the right of way at the town of Madge would, as shown by the evidence, have necessitated the construction of cattle-guards at the crossing of the public highway, with wing fences connecting such cattle-guard with the right of way fences. It needs no evidence to establish that such a cattle-guard and such fences would be a constant menace to the lives and limbs of employees transacting the business of the company in connection with the movement of its trains. Wright v. Railroad, 56 Mo. App. 367; Pierson v. Railroad, *supra;* Kneadle v. Railroad, *supra.*

BLAND, P. J.—This suit originated in a justice's court; the demand relied on in the circuit court for a recovery is in

four counts; each one is for the value of stock killed by being run upon by defendant's train within its switch line at Madge, an unincorporated village on the line of defendant's road in the county of McDonald, which switch limits plaintiff alleges the defendant negligently failed to fence. The issues were submitted to a jury, who returned the following verdict, to wit: "We, the jury, find for the defendant upon all of the causes of action contained in his statement." On this verdict a judgment was rendered by the court for defendant and plaintiff appealed.

There are no specific and formal assignments of error made by the appellant in his statement or brief, but we gather from the brief the following complaints:

1. That the verdict is unintelligible and is too uncertain to authorize the judgment of the court.

2. That the court erred in giving instructions numbers 14 and 15 for the defendant.

3. That the plaintiff made a *prima facie* case, and as the defendant offered no testimony, the verdict should have been for the plaintiff. We shall notice these contentions in inverse order.

1. At the close of plaintiff's case the defendant moved the court to instruct the jury to find the issues for the defendant. The court overruled this motion, defendant offered no testimony, and the issues were submitted to the jury on instructions. Appellant insisted that in this state of the case the court should treat the case as though the demurrer to his evidence had been sustained, and should determine from all the evidence whether plaintiff made out a *prima facie* case, and if so, to reverse the judgment, citing Utassy v. Giedinghagen, 132 Mo. 53, in support of his contention. The Utassy case was an ejectment suit and the issues were submitted to the court; defendant demurred to plaintiff's evidence, which the court overruled; defendant offered no testimony, and the court took the case under advisement, and

subsequently found the issues for the defendant; no instruc-
tions were given; the supreme court, speaking through Bur-
gess, Justice, said of this action of the trial court: "Its
subsequent action, however, in finding for defendant was a
reversal of its former ruling without giving plaintiff a chance
to ask declarations of law presenting her theory of the case,"
and concluded that the case should be considered as though
the demurrer to the evidence had been sustained. This case is
not parallel to the Utassy case; in the case at bar declara-
tions of law were given and the issues were passed upon by the
jury under instructions given by the court, and the verdict
stands on the same footing as any other verdict, and should
not be set aside because opposed to the opinion of the court
as to the credibility of the witnesses, or probative force of
the evidence.    Conceding that plaintiff made a *prima facie*
case, it is wholly dependent on oral testimony of witnesses,
of whose credibility the jury were the exclusive judges, and
the natural inference to be drawn from the verdict is, that
the jury did not believe some of the witnesses.    Schroeder v.
Railway, 108 Mo. 322; Wolff v. Campbell, 110 Mo. 120;
Bank v. Hainline, 67 Mo. App. 483.

2.    The testimony is that at one time Madge was a place
of some importance to the defendant as a shipping point for
lumber and stone, and that the defendant maintained a
station house there in charge of an agent; but that the mills,
which produced the lumber, had ceased to operate, the quarry
was worked but little, and that defendant had removed its
station house and had now remaining only a platform fifty
feet long and six feet wide as evidence of a station, and that
no trains were scheduled to stop at the village and did not
stop except when flagged or on infrequent occasions when it
had freight to discharge or receive.    On this testimony the
court instructed the jury as follows:    No. 14.    "The jury
is instructed that the defendant had the right to remove its

depot building and extend and connect the side track at the south end and the plaintiff will not be entitled to recover by reason thereof." Appellant complains of this instruction, for what reason is not stated. It was a useless instruction, but it was harmless; neither the pigs, the cow nor the bull, for the killing of which damages are claimed, were killed by the removing of the station house, nor did its removal contribute to their death, nor is it claimed that the extension of the switch contributed to their destruction, and we are unable to see what harm to plaintiff the useless instruction could have wrought in the jury room. The next instruction complained of is as follows:

"The court instructs the jury that the railroad company had the right to maintain a station at Madge and the necessary side tracks for the transaction of its business in receiving and discharging freight, and for the passing of its trains, and if in the transaction of such business the public or the railroad company necessarily required that the lands adjacent to the station or switch at Madge be unfenced it becomes immaterial whether the town of Madge is incorporated or laid out in lots and blocks, or whether there are any road or highway crossings over the railroad tracks."

The town of Madge seems to have "just grown up" without father, proprietor or projector; it had no streets, was not laid out in blocks and lots as towns usually are; it just struggled into existence without definite plans for future expansion or development, and at the time of the several killings mentioned in the complaint it seems to have been in the embrace of the "grim monster death," having lost all of its members but one small store, a few stacks of lumber, some rock piles and one public road as a means of approach to her front. From the language of the instruction one would conjecture that defendant's counsel and the court, apprehensive that the jury might conclude to administer a pecuniary punishment to defendant for the downfall of Madge, and make

the pigs, the cow, and the bull the vehicles to convey that punishment into a judgment, framed the instruction for the purpose of preserving the memory of these dead animals' from the stigma of such an unmerited slander. The sole issue on the question of liability of the defendant was whether or not it should have fenced its switch limits at Madge, and the instruction when the redundant and irrelevant matter is eliminated, inefficiently submits this issue to the jury. There is nothing in the instruction that was prejudicial to the plaintiff, and it contains no sufficient error to warrant a reversal. The railroad company had the right to build these or any other switches and side tracks necessary for the transaction of its business and to leave them open, if to fence, would have been dangerous to the lives or limbs of its servants operating its trains. The latter fact is not a question of law, but of fact to be submitted to the jury under proper instructions, as has been repeatedly held by the appellate courts of this state. The question was submitted to the jury under instructions, which while subject to criticism, were not prejudicial to plaintiff, nor so erroneous as to warrant a reversal.

3. If a verdict intelligently finds the issues it answers every requirement, and in construing a verdict the main object is to get at the meaning of the jury, and if this can be clearly ascertained from the verdict itself, it will be sufficient. 3 Graham & Waterman on New Trials, 1377; State v. Wilson, 1 L. R. A. 795. A verdict should receive a reasonable intendment or construction, and not be avoided except from necessity. Hilliard on New Trials, 134. They are not required to be in any particular form, but are sufficient if they convey in unmistakable terms just what the jury meant and are responsive to the issues. The Provo Mfg. Co. v. Severance, 51 Mo. App. 260. But a verdict must be certain, positive and free from ambiguity, and show what the

VERDICT, intelligent.

jury intended. An obscurity which renders it doubtful is fatal, and it must be its own interpreter. Courts are not authorized to interpret verdicts of juries; they may require amendments to be made before receiving a verdict from the jury, and they may supply obvious omissions after their reception, but they can not by interpretation supply fatal omissions. Graham & Waterman on New Trials, 1378. The verdict in this case is uncertain; it finds for the defendant "on all the causes of action stated in his statement." The defendant had no cause of action, stated no statement of any kind by set-off or otherwise, and it is impossible to know from the verdict what the jury meant by this clause in their verdict. One of two things must have been in their minds, either they intended to find for the plaintiff on all four of the counts of the complaint and inadvertently inserted defendant when plaintiff was intended, or they intended to find for defendant on all four of the counts in the complaint, and inadvertently used the pronoun "his," when they intended to use the word plaintiff, but whether the one or the other was intended is uncertain, and for this reason the verdict is insufficient and should have been set aside. The judgment is reversed and the cause remanded. All concur.