LYDIA MARTIN, Respondent, v. THE FIRST NATIONAL BANK, a Corporation, Appellant.

Kansas City Court of Appeals, February 7, 1921.

1. **Gifts: Definition: Gift Inter vivos.** A gift *inter vivos* is a contract which takes place by mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee, who accepts and acquires the title to it, and it operates, if at all, in the donor's lifetime, immediately and irrevocably.

2. ———: **Constituent Elements of Gift Inter vivos.** The constituent elements of a gift *inter vivos* are: (a) that the purpose of the donor to make the gift must be clearly established, and (b) the gift must be complete by actual, constructive or symbolical delivery, without power of revocation.

3. ———: **Deposit of Money For Use of Another with Condition Requiring Donor to Join in Checking on Fund, Held, Not a Gift Inter**

**Vivos.** Where money was deposited in bank for use of alleged donee by the alleged donor, and bank was not authorized to pay out any funds without check bearing their joint signatures, there was no gift *inter vivos*, the gift not having been unconditional and complete because the depositor retained dominion over the money.

Appeal from the Circuit Court of Callaway County.— *Hon. David H. Harris*, Judge.

REVERSED.

*N. T. Cave* for respondent.

*Baker & Baker* for appellant.

ARNOLD, J.—William Sulzer died in 1915, leaving a policy of life insurance payable to his son, John W. Sulzer.

The beneficiary under said policy of insurance collected the amount and .deposited it to his own credit in the First National Bank at Fulton, Callaway county. After depositing said funds in the bank as aforesaid, John W. Sulzer called his mother, Mrs. Rosena Sulzer, and his sister, Mrs. Lydia Martin, into the bank and told them there that he was going to divide the balance of the proceeds of the insurance after deducting the amount of the costs and expenses, including the doctor's bill and funeral expenses, of his father, a sum of $1333.02, between himself, his mother and plaintiff herein, one-third each, or $444.34.

He directed that this amount ($444.34) be transferred from his account on the books of the defendant bank and deposited "for use of Mrs. Lydia Martin;" at the same time, and as a part of the same transaction, he executed and left with the defendant bank a writing, as follows:

"Fulton, Missouri, December 16, 1915.
"To the First National Bank, Fulton, Missouri.
"I have this day deposited for use of Mrs. Lydia Martin, the sum of $444.34 to be drawn out only on

check signed by 'J. W. Sulzer and Lydia Martin,' also the same amount (\$444.34) for use of Mrs. Wm. Sulzer to be drawn out only on check signed by 'J. W. Sulzer and Mrs. Wm. Sulzer.' In the event of my death before these funds are all used, I hereby direct that each party above named draw out balance of funds on check signed by said parties for balance due in each fund of their names, in other words these funds are not to be considered as part of my estate but must go to these parties.

(Signed)     J. W. SUIZER."

"Sparrel McCall, Witness."

The account in question was carried on the books of defendant bank in the name of "Lydia Martin and J. W. Sulzer," and accordingly a book commonly called a "pass book" was delivered to plaintiff Lydia Martin. Thereafter plaintiff withdrew from said account the total sum of \$144.34, at different times, on seven checks in various amounts, said checks having been signed, as stipulated in the instrument of writing aforesaid, by J. W. Sulzer and Lydia Martin. These checks were presented in evidence at the trial and marked "plaintiff's exhibits A, B, C, D, E, F, & G."

During the month of March, 1919, J. W. Sulzer presented three checks of \$75, \$100, and \$125, respectively, drawn against said account and purporting to have been signed by J. W. Sulzer and Lydia Martin, payable to J. W. Sulzer and indorsed by him, and which exhausted the balance of said account.

The testimony which was not seriously disputed tends to show that the signatures "Lydia Martin" signed to these checks were not the genuine signatures of Lydia Martin but, instead, were forgeries.

In August, 1919, plaintiff went to the defendant Bank and talked with Mr. Harrison, the cashier, and ascertained from him that three checks had been drawn against the account by J. W. Sulzer. The cashier exhibited to her the said three checks (plaintiff's exhibits "H, I and J,") and stated that there were no funds to her credit in the bank. Plaintiff then filed suit in the

circuit court of Callaway county to recover the amount of $300, and interest from August 1, 1919.

The petition is in three counts, the first of which is as follows: "Plaintiff states that the defendant is a banking corporation, duly and legally organized and incorporated under the laws of the United States, and is now and was at all times hereinafter mentioned doing general banking business in the City of Fulton, Callaway county, Missouri.

"Plaintiff for her cause of action states that on or about December 16, 1915, she deposited with the defendant, the sum of $444.34; and that on March 3, 1919, the defendant, without the authority, consent. or knowledge of plaintiff, charged against said account, the sum of $75, no part of which was received by this plaintiff, and plaintiff states and alleges that said check drawn upon defendant bank, on March 3, 1919, and for $75 was a forgery and that the name of this plaintiff was forged to said check and that the defendant cashed the same without any right or authority or direction from this plaintiff.

"Plaintiff further states that she has often requested and demanded said money of the defendant, but the defendant failed, neglected and refused to pay said sum to the plaintiff, or to credit her account therewith.

"Wherefore plaintiff prays judgment against defendant in the sum of $75 with interest thereon at the rate of six per cent per annum from August 1, 1919, until said sum is paid and for her costs expended."

The second and third counts are the same with the exception of the amounts of the checks, being $100 and $125 respectively.

The answer is a general denial.

The judgment was for plaintiff in the sum of $300 and interest from August 1, 1919. From this verdict and judgment defendant appeals.

In the assignments of error, the only points raised are: (a)    The court erred in refusing to sustain a

demurrer to plaintiff's evidence, and (b) in failing to give a peremptory instruction to the jury to find for defendant at the close of all the evidence.

Defendant argues that "under all the evidence in the case the only interest respondent had in the funds in dispute was that of a *donee* of an incompleted gift *inter vivos.*"

This, therefore, is the only question for determination before this court.

"A gift *inter vivos* is a contract which takes place by the mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee gratuitously, and the donee who accepts and acquires the title to it. It operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further act of the parties, no contingency of death or otherwise is needed to give it effect." [20 Cyc. p. 1192.]

The constituent elements of a gift *inter vivos* are: (a) that the purpose of the donor to make the gift must be clearly estalished, and (b) the gift must be complete by actual, constructive, or symbolical delivery, without power of revocation. "Where the donor retains dominion over the property, or where a *locus penitentiae* remains to him, there can be no legal and perfect donation." [20 Cyc. p. 1195.] "There must be a parting by the donor with all present and future legal power and dominion over the property." [Id. p. 1196.]

Applying these principles of law to the facts of the present case, we must conclude that the alleged gift by J. W. Sulzer to plaintiff is lacking in some of the essential elements to make it a perfect gift *inter vivos*.

In the instrument of writing under the terms of which the funds were placed in the defendant bank, we find this language: "I have this day deposited for use of Mrs. Lydia Martin the sum of $444.34 to be drawn out only on check signed by J. W. Sulzer and Lydia Martin." Can it be seriously contended that this was "a gift executed" and that there was no further act of.

the parties, no contingency of death or otherwise, needed to give it effect? We think the law requires the instrument of writing to be very plain on this point and that in order to make the gift operative it must be made "without power of revocation." [20 Cyc. p. 1193-C.] For the purpose of allowing the alleged donee to draw these funds, the signatures of both J. W. Sulzer and Lydia Martin must be signed to the checks. The gift, therefore, in our opinion, was imperfect and not a completed gift *inter vivos*.

In Godard v. Conrad, 125 Mo. App. l. c. 174, the court says: "As before observed, to support a gift *inter vivos*, there must be an immediate and unconditional delivery of the subject to the donee. The act of delivery must operate as a complete divestiture of the donor with respect to the title and right of possession to the subject of the gift and the investiture of the donee." And in support of this principle, the court cites Harris Banking Co. v. Miller, 190 Mo. 662.

By the limitation placed by the alleged donor upon the use by plaintiff of the alleged gift, in that she could not withdraw the money without their joint signatures, it seems clear to us that J. W. Sulzer held the gift within his dominion; and under the terms of the instrument of writing by which transfer of the funds on the books of the bank was directed, the gift was not unconditional, and was not a complete gift. And we so hold. This position is clearly upheld by the court in Trust Company v. Reagan, et al., 193 Mo. App. 290, and cases therein cited.

Counsel for defendant, in their assignment of errors, suggest that the proper action against defendant is one in equity to compel defendant again to place the funds in question on the books of the bank to the credit of J. W. Sulzer and Lydia Martin. This may be so, but we are not deciding that question at this time.

The peremptory instruction asked by defendant at the close of the case should have been given.

Judgment is reversed. All concur.