EXONA CREMER, ADMINISTRATRIX OF THE ESTATE OF SERENA MAY, DECEASED, APPELLANT, v. C. L. MAY, RESPONDENT.*

Springfield Court of Appeals. May 24, 1928.

58

*Corpus Juris-Cyc References: Courts, 15CJ, section 328, p. 939, n. 57; Executors and Administrators, 23CJ, section 415, p. 1187, n. 61, 64; Gifts, 28CJ, section 21, p. 630, n. 66; section 71, p. 670, n. 36; section 82, p. 678, n. 37; Trial, 38Cyc, p. 1600, n. 51.

*George Goad* and *Herman Pufahl* for appellant.

*Barbour, McDavid & Barbour, Addison Brown* and *Frank S. Sea* for respondent.

BRADLEY, J.—This cause originated in the probate court of Polk county and is a proceeding under section 62, Revised Statutes 1919, to discover assets. At a previous term we handed down an opinion in this cause, but granted a rehearing. We shall refer to appellant as plaintiff and respondent as defendant. Serena May died intestate in Polk county on November 23, 1921. February 3, 1922, plaintiff, a granddaughter of deceased, was appointed ad-

ministratrix of the estate. August 5, 1922, plaintiff filed affidavit to discover assets. On same day citation issued directed to defendant a son of deceased returnable on August 14, 1922. Defendant in due time made return or answer to the citation. Thereafter interrogatories and answers thereto were filed. The issues made on the interrogatories and answers were tried without a jury in the probate court and resulted in a finding that defendant was withholding from the estate the following property: A note for $1000 dated August 31, 1920, payable to deceased, due two years after date and signed by A. Pemberton; a note for $850 dated September 21, 1920, payable to deceased, due two years after date and signed by R. A. Morrow; and $1045 in money. Defendant appealed to the circuit court from the judgment of the probate court. February 9, 1923, the venue was changed from Polk to Greene county. January 22, 1924, the cause was tried in the Greene county circuit court before the court and a jury and resulted in a finding that defendant was withholding from the estate the Pemberton and Morrow notes and $1130.25 in money. A motion for a new trial was sustained, and the cause passed from term to term until June 1, 1926, when it was again tried to a jury and resulted in a finding that defendant was withholding the two notes and $1045.25 in money. Motion for a new trial was filed and sustained and plaintiff appealed from the order granting a new trial.

The money alleged to be withheld consisted of two separate items, viz.: Money amounting to $1000 which, it is claimed, deceased had at the time of her death; and (2) $45.25, the proceeds of some household goods which defendant sold after the death of deceased. The new trial was granted because the court was of the opinion that error had been committed in giving a peremptory direction to find for plaintiff and against defendant on the $1000 item. The court also gave a peremptory direction to find for plaintiff on the $45.25 item, but the correctness of this direction is conceded.

It is contended by plaintiff that there is no evidence of a substantial nature to make an issue of fact of the $1000 item and that there is no other ground alleged in the motion for a new trial sufficient to support an order for a new trial, and that, therefore, the judgment set aside should be reinstated. On the other hand defendant contends that there was substantial evidence to make an issue of fact on the $1000 item and also that the court erred in giving certain instructions for plaintiff.

An appellate court will not reverse an order granting a new trial, which order specifies an insufficient ground, when it is shown that other sufficient grounds, complained of in the motion for a new trial, exist, but the burden is upon the respondent to show such other sufficient ground or grounds. [Roney v. Organ, 176 Mo. App. 234, 161 S. W. 868.] Hence we have two questions, viz.: (1) Was there

sufficient evidence on the $1000 item to make an issue of fact? and (2) was error committed in giving instructions, complained of by defendant in his motion for a new trial and urged here as being sufficient ground to support the order granting the new trial?

Serena May left, as her only heirs, two sons, one daughter and three grandchildren by a deceased daughter. All the heirs are adults and all reside in other states except defendant, a son, and plaintiff, a granddaughter. Plaintiff resides at Holden, Missouri, in Johnson county and defendant resides at Bolivar, Missouri, in Polk county. Deceased had made her home in Polk County for many years, but spent some years with her son in Iowa and daughter in California, but for seven or eight years next prior to her death she remained at Bolivar. When well, deceased was active, and, for the most part, looked after her own business, but as age advanced and health declined defendant assisted in or looked after her business. At the time of her death deceased was maintaining her own home and was not residing in the home of defendant.

Defendant contends that deceased, his mother, a short time prior to her death, gave him the two notes above mentioned and the $1000 in money, and that by reason of such gift said notes and money became his absolute property. The learned trial court submitted to the jury the issue on the gift of the notes, but as stated, gave a peremptory direction to find against defendant on the alleged gift of the $1000 in money.

Defendant assumed the burden and, to support his contention that his mother gave him the notes and the $1000 in money, offered evidence as follows: Mrs. May, defendant's wife, testified that on a certain morning about three weeks before the death of deceased defendant came from his mother's home and had in his possession the two notes in question here; that defendant handed the notes to witness and that she "looked at them;" that about a week before the death of deceased, she, witness, had a conversation with deceased in which conversation deceased stated to witness that she, deceased, had "given Charley (defendant) these two notes and what money she had in the bank. . . . She said that she had given the other children all she intended for them to have; that she had helped the other boys so much and raised these two grandchildren and graduated the oldest one; that was her part, and she had never done nothing for Charley and she gave him these two notes and money; she wanted him to have it while she was living and in her right mind."

On cross-examination Mrs. May was asked and answered as follows: "Q. Do you know anything about the $1000 that he drew out on October 17th? A. She told me she told him to go draw it out.

"Q. She told you she told him to go draw that out? A. Yes, she wanted him to have it.

"Q. When did she tell you that? A. About a week before she died.

"Q. Did she tell you then that she told him away back in October to go draw that money out? A. No, I believe she did too; I can't remember about this; about a week before she died she told me; yes.

"Q. About a week before she died she told you she was giving it to Charley? A. Yes, about a week before she died she told me she had given the money to Charley.

"Q. How much money did she say she had given him? A. She didn't say.

"Q. She didn't say whether it was $1 or $1000. A. She just said, 'I told Charley to go and get what money there was in the bank.' She said she had given it to him.

"Q. She said that about two weeks before she died. A. She told me about a week before; and he come home with the notes about three weeks before that.

"Q. You didn't see the $1000 he had at that time in cash? A. I never seen the money at all. I saw the notes and the pocket book.

"Q. That is all you saw? A. Yes, sir."

Mrs. Caroline Sells, a witness for defendant, stayed with deceased at night during her last illness and waited on her. This witness had a conversation with deceased, relative to her property, but the time of the conversation is not fixed, except that it was prior to the time when Dr. Roberts went to the home of deceased to witness her will and as appears, infra, this was three or four weeks prior to the death of deceased.

This witness was asked and answered: "Now then, if Mrs. Serena May said anything to you about any of the personal property belonging to her just go ahead and relate just what she said? A. Yes, sir. Well, she turned everything over to Charley and said it was to be his.

"Q. Now just go on and relate just what she did in your presence, if anything? A. Well, she turned her watch over to him, and turned her pocketbook over to him, and she turned those papers over to him, and she stated there was one paper in the bank.

"Q. Now, describe as near as you can what kind of pocketbook it was that she turned over to Charley? A. Well, there was one pocketbook she turned over to Charley that was about that size (indicating), and then there was a hand bag that she turned over to him; I called it a hand bag. There was a pocketbook that she turned over to him and there was another one that she turned over to him that might be called a pocketbook, but I would call it a hand bag. The pocketbook was not in the hand bag; it was separate. It contained papers that looked about the size of notes. I suppose it would be something like eight inches in length and that would be about the

depth of it too, something near about square. When she gave these to Charley she said, 'Charley, I will soon be gone. It is all yours.' She was in her right mind up until the very last. I was present one night when Dr. Roberts was in there. That night she stated that she had put this paper in the bank and that it was to go just like that paper stated. She sent for me to come that night and when I got over there she testified about the paper that she had put in the bank. She told about that paper before Dr. Roberts. She stated about this paper being in the Dunnegan bank, and said it was signed by Willard Dunnegan. She said there was a paper in the bank and she wanted it to go like that paper said.''

Mrs. Alice Like, a witness for defendant, waited on deceased, during her illness, through the day. Mrs. Like testified concerning a conversation between defendant and deceased on the 20th or 21st of November, two or three days prior to the death of deceased. Of this conversation Mrs. Like testified: ''I heard a conversation between her and her son, C. L. May, and she said she wanted him to get her money out of the bank. She told him it was his and she wanted him to have it. He said he would go get it to please her. When he brought it back, he asked her what she wanted him to do with it and she told him it was his; she wanted him to have it. She had given the rest of the children all she wanted them to have; it was his. I don't remember of hearing any conversation between her and him about any notes.''

On cross-examination Mrs. Like testified: ''I didn't see any money. He didn't count out any money to her. I didn't see her give him any money. All I saw was just an envelope. It was a large envelope, about this size (indicating). It looked like it was sealed. I did not notice that it had marked across it, 'Last Will of S. W. May.' It was not thick. It looked just as if it might have had a sheet of paper in it. I don't remember that Mrs. May told Charley that the paper was in the Polk County Bank and that Willard Dunnegan had it. She did tell him that she wanted her money and property to go the way it said in that paper. Mrs. May had several conversations with Charley about this money. She asked him if he had got it out of the bank and she kept on at him to get the money out of the bank and he said: 'I will go and get it to please you.' On the morning of the 20th or 21st of November, 1921, Charley told her, 'Here it is, mother. What do you want me to do with it?' I don't remember that he said, 'I went to the bank today and got it.' ''

Plaintiff's evidence tended to show as follows: Deceased was confined to her bed for eight weeks during her last illness, and died November 23, 1921. April 25, 1921, she had on deposit in the Polk County Bank, in a checking account, $380, and thereafter deposits were added making a total of $1899.47. Checks were drawn on this account from time to time and the account was exhausted at the

time of the death of deceased. Deceased had given defendant the
right to check on her account and to sign her name to the checks.
Of the checks drawn, defendant drew the following:

August 29, 1921, $16.47, payable to cash;
September 21, 1921, $5.00, payable to defendant;
October 6, 1921, $8.00, payable to defendant;
October 12, 1921, $20.00 payable.to defendant;
October 17, 1921, $1000.00 payable to defendant;
October 20, 1921, $20.00 payable to defendant;
October 31, 1921, $20.00 payable to defendant;
November 8, 1921, $8.00 payable to A. T. Tinkle;
November 15, 1921, $12.00 payable to defendant;
November 18, 1921, $8.00 payable to A. T. Tinkle.

June 27, 1921, deceased went into the Polk County Bank and left
therein and among her papers the following instrument written in
her own handwriting: "Bolivar, Mo. June 27, 1921. I, S. W.
May, leave all my property, if I leave any notes or money, to C. L.
May, at my death, but five ($5) dollars to Nell A. Sawyer, five
($5) to W. M. May and fifty ($50) to Blanch McElhaney, if there
is enough left to spare and if not five ($5) dollars to her, and five
($5) to Bessie Stewart, and five ($5) dollars to Exey Stewart. I
leave all of it for C. L. May to him only but it is mine as long as I
live to do as I please with it to change or do anything I want to with
it as long as I live. It is C. L. May's at my death.

"(Signed) S. W. May."

W. B. Dunnegan, vice-president of the bank, at the request of de-
ceased wrote on the back of the above instrument the following:

"Left with Polk County Bank by Mrs. S. W. May, June 27, 1921.

"(Signed) W. B. Dunnegan."

After the death of deceased defendant caused to be mailed bank
drafts to those named in .the above instrument for the amounts
therein specified, but these drafts were, for the most part, returned.
Three or four weeks prior to his mother's death defendant requested
Dr. J. F. Roberts, deceased's physician, and W. B. Dunnegan, to
go to his mother's home to witness her will. Dr. Roberts went, but
Mr. Dunnegan was not able to go and no will was made. On this
occasion deceased told Dr. Roberts that she wanted her property
"to go just as those papers stated," having reference to the above
instrument. On the day of his mother's death defendant went to
J. M. Leavitt, a lawyer in Bolivar, and told him that his mother
wanted him, Leavitt, to prepare her will. Defendant having the
privilege of access, at all times, to his mother's papers, went to the
bank and obtained the instrument above quoted and delivered it to
Leavitt and told him that the will was to be drawn, making disposi-
tion of his mother's property as shown in "the paper." Leavitt
drew the will as directed, but deceased was then unconscious and so

remained until her death and the will was not executed. On the day of the funeral defendant requested D. W. Puthuff to act as a pallbearer and on this occasion told Puthuff that deceased had $1000 in the bank and that she wanted him, defendant, to take and use it, but that he did not want to use it "because it would cause trouble with the other children."

December 11, 1921, defendant's wife, for him, wrote Mrs. Blanche McElhaney, one of the grandchildren, the following letter:

"Well Blanche I got your letter yesterday and everything has been done just exactly as ma said, but it was left up to me where you got five dollars or fifty dollars, I haven't done anything in the dark, now as for the will and lawyer that wrote it that is nothing to you for ma said that she had to support you three children and your mother while she lived and she also took you and Bessie and raised you, and she said that was your share and more too; I never did say a word against her doing for you children, it has been done just as ma said and nothing can't be changed, I am the one that has had the hard time with ma and I expect to see that it goes just as she says. What is Bessie's address, I am trying to find Roe. Hope you are all well, It won't do any good for anyone to try to start any trouble for it will stand just like it is you can do just as you please it is a free country.

"Yours as ever,
"C. L. MAY."

There are other facts and circumstances tending to show that defendant did not, in the beginning rely upon an oral gift of the property claimed by him, but it is not necessary to further state the evidence here.

The burden was on defendant to establish the gift. It would not be unreasonable to infer from the evidence of Mrs. Sells and Mrs. Like that deceased wanted her property to be disposed of in accordance with the instrument which she left in the bank. It is also reasonable to indulge the presumption that she considered this instrument as her will, but it was not witnessed as the law requires and can have no standing as a will. If the instrument was to be observed as directed by deceased, according to the evidence of Mrs. Sells and Mrs. Like, then deceased, during life, did not intend to relinquish dominion over and ownership of her property. But the evidence of defendant's wife is not so lame on the question of a gift. Mrs. May testified positively that about a week prior to the death of deceased, that deceased told her that "she had given Charley these two notes and what money she had in the bank." It is true that defendant at that time had already drawn all or practically all of the money out of the bank, but there is no evidence that deceased knew that defendant had drawn $1000 on October 17th. As we read the record the evidence tending to show a gift of the $1000 is of about the same

probative force as that relating to the gift of the notes except on the question of delivery.

To constitute a valid gift *inter vivos* there must be not only an intention to give, but a delivery, actual or constructive, of the property to the donee or to some one for him, and in order to constitute delivery the donor must relinquish present and future dominion over and control of the property. [Harris Banking Company v. Miller, 190 Mo. 640, 89 S. W. 629; Chandler v. Hedrick, 187 Mo. App. 664, l. c. 672, 173 S. W. 93; Martin v. First Nat. Bank, 206 Mo. App. 629, l. c. 633, 227 S. W. 656.] It does not appear on what theory the trial court proceeded in giving the peremptory direction to find for plaintiff as to the $1000, but we infer that it was on the theory that there was no evidence of delivery of the $1000. According to the evidence of Mrs. Like, deceased, two or three days before her death, told defendant to get her money out of the bank; that defendant at least pretended to comply and showed deceased an envelope and said, "Here it (the money) is mother. What do you want me to do with it?" And she told him "it was his." Deceased was an intelligent woman and on the occasion when defendant presented to her the envelope, stating, in effect, that her money was therein, she was in possession of her mental faculties and no doubt had a fairly accurate idea as to the amount of the money she had, and believing at that time that her money was in the envelope and within her reach, she, according to the evidence of Mrs. Like, in answer to the question of defendant as to what he would do with it, said "it was his."

In Martin v. First National Bank, supra, the court said; "The elements of a gift *inter vivos* are; (a) That the purpose of the donor to make the gift must be clearly established, and (b) the gift must be complete by actual, constructive or symbolical delivery, without power of revocation."

It would have been a meaningless performance for defendant to have handed the envelope to deceased and for the deceased in turn to have handed it back to defendant. In Burke v. Adams, 80 Mo. 504, the delivery of a deed was an issue, and in considering the question the court said: "What constitutes a delivery of a deed is often a mixed question of law and fact. An arbitrary rule ought not to be laid down. Each case must stand more or less on its peculiar facts. The intent to convey is evidenced by the act of making out and duly executing and acknowledging a deed. The delivery may be evidenced by any act of the grantor by which the control or dominion or use of the deed is made available to the grantee. It is not necessary it should be handed over actually to the grantee or to any other person for him. It may be delivered under certain circumstances, though it remain in the possession of the maker. Where, however, there is not an actual transfer from the grantor to the grantee, it

should affirmatively appear from the circumstances, acts or words of the parties, that the intention to pass the title really existed.''

In Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1076, the delivery of some bonds was in question and there the court quoted from the Burke case the pronouncement as above quoted relative to the question of delivery. In the cause at bar it is our conclusion that there was sufficient evidence, on the issue of the gift of the $1000, to make an issue of fact for the jury. There is much evidence tending to show that deceased did not intend to relinquish control over her property during her life. Also defendant's answers to interrogatories in the probate court are contrary to the theory of a gift as claimed by him, but we think that we would invade the province of the jury should we rule that there was absolutely no evidence to support the theory of the alleged gift of the $1000. We rule, therefore, that the motion for a new trial was properly sustained as to the $1000 item so far as concerns the sufficiency of the evidence.

We shall next consider the instructions. Instruction No. 1 given for plaintiff is complained of on the alleged ground that it is argumentative. Instruction No. 1, so far as material here, is confined to the issue on the alleged gift of the two notes. In the prior opinion we did not rule on the correctness of instruction No. 1, but suggested that in the event of a retrial plaintiff could recast the instruction and eliminate the alleged objectionable features. In the motion for rehearing and on oral argument, when the cause was reargued, counsel for plaintiff contended that there is no error of substantial consequence in instruction No. 1, and that the verdict as to the two notes and the $45.25 should be reinstated unless it be finally held that error was committed in giving plaintiff's instruction No. 4.

Instruction No. 1, so far as pertinent here, is as follows:

''You are further instructed that it is admitted by the pleadings in this case that the defendant, Charles L. May, has in his possession one note executed by A. L. Pemberton in the sum of $1000 and that he also has in his possession one note executed by R. A. Morrow in the sum of $850, the court therefore instructs you that you must find the defendant, Charles L. May, guilty of wrongfully withholding said two notes, to-wit, the one in the sum of $1000 executed by A. L. Pemberton and one for $850 executed by R. A. Morrow, from the estate of Serena W. May, his mother, unless you further find from the evidence that the said Serena W. May in her lifetime unconditionally gave and delivered possession of said notes to the said Charles L. May to keep and to hold as his own notes without her having any further control over said notes, and before you can find that such alleged gift was made you must find from the evidence that the said Serena W. May intended to and did part with all interest and title to the notes in controversy and that in making said gift (if it was made) it was mutually understood and agreed between the said

Serena W. May and Charles L. May at the time that it was the intention of the said Serena W. May to at once pass the title and possession of said notes to the said Charles L. May and that the said Charles L. May at the time so understood and accepted the same and unless you find the facts so to be you must find the defendant, Charles L. May, guilty of withholding said notes from the estate of Serena W. May.''

We have again carefully considered the complaint made against instruction No. 1. Able counsel cite no authority and we find none that would justify overturning the verdict as to the two notes because of instruction No. 1. Hence, unless, there are other reasons we shall follow the suggestion of plaintiff as to the verdict respecting the two notes and the $45.25. It is our opinion that Tygard v. Falor, 163 Mo. 234, 63 S. W. 672, supports the correctness of plaintiff's instruction No. 1. There the following instruction was approved:

''It is admitted by the pleadings in this case that the defendant, Charles Falor, received the sum of $2783 from the sale of cattle belonging to his father, Elias Falor, and sold by him as agent for his father, between the twenty-seventh day of August, 1895, and the first day of March, 1896, and that he did not pay the said sum of money to his father in his lifetime and has not since the death of his father charged himself in his inventory as executor of his father's estate with said money or in any way accounted to said estate for the same. Wherefore, the court instructs you that you will find the defendant guilty of wrongfully withholding said money from said estate in refusing to inventory the same as such executor, unless you shall further find from the evidence that the said Elias Falor in his lifetime gave said money to said Charles Falor to keep and hold as his own property, and before you find that such alleged gift was made you must find from the evidence that said Elias Falor intended to and did part with all interest and title to the money in controversy, and in making said· gift it was mutually understood and agreed between him and the said Charles Falor at the time that it was the absolute intention of the said Elias Falor to at once pass the title and possession of said money to said Charles Falor and that Charles Falor at that time so understood and accepted the same.''

Instruction No. 4 is as follows: ''The court further instructs the jury that the burden is on the defendant to prove the alleged gift by *evidence which is clear and unequivocal and which convinces the jury of its truthfulness;* and unless you so find and believe from the evidence that the defendant has so proved the alleged gift, then you must find the defendant guilty of withholding said notes.'' [Italics ours.]

It is contended that the italicized portion of instruction No. 4 cast a greater burden upon defendant than is required by the law. It

is conceded that the alleged gift, if it was made, was a gift *inter vivos*. In Reynolds v. Hanson, 191 S. W. 1030 this court had under consideration an alleged gift *inter vivos*. There it was stated, quoting from Jones v. Falls, 101 Mo. App. 536, 73 S. W. 903, that: "Such transactions must be established by clear and convincing testimony, and, further, the general rule requiring gifts *inter vivos* to be established by conclusive evidence is especially applicable where such gift is not asserted until after the death of the alleged donor, and gifts thus preferred after death of the alleged donor are regarded with suspicion by the court."

McCune v. Daniel, 225 S. W. (Mo. App.) 1020, was in replevin to recover a note alleged to belong to plaintiff by gift *inter vivos* from the grandfather of plaintiff. There the court quoted with approval from In re O'Connell, 53 N. Y. Sup. 748; 33 App. Div. 483, as follows: "He who attempts to establish title to property through a gift *inter vivos*, as against the estate of a decedent, takes upon himself a heavy burden, which he must support by evidence of, great probative force, which clearly establishes every element of a valid gift."

28 C. J. 676, states the general rule as to the sufficiency of the evidence to establish a gift *inter vivos* as follows: "In order that the rights of creditors may not be prejudiced, that the donor may not be circumvented by fraud, that he may be protected from undue influence which would result in an unequal and unjust distribution of this estate, and that efficacy may not be given to gifts made under legal incapacity, as well as on other grounds, it is held that gifts *inter vivos* are watched with caution by the courts, and that to sustain them the evidence must be clear and convincing."

In support of the general rule as stated Corpus Juris cites, among many cases from other jurisdictions, Hunter v. Wabash R. Co., 149 Mo. App. 243, 130 S. W. 103, by this court. In speaking of the alleged gift in the Hunter case it was stated that "a transaction to be an executed gift must be established by clear and convincing testimony." The Hunter case was transferred from this court back to the St. Louis Court of Appeals because the act authorizing the transfer to this court was held to be unconstitutional. After the cause was again lodged in the St. Louis Court of Appeals that court adopted the opinion of this court. [See Hunter v. Wabash R. Co., 160 Mo. App. 601, 140 S. W. 930.]

Tygard v. Falor, 163 Mo. 234, 63 S. W. 672, cited, supra, was an action to compel a son to return to the estate of his deceased father money claimed by the son as a gift from his father. Falor was executor of the estate and plaintiff was a trustee. On behalf of plaintiff in the Tygard case the court, among others, gave this instruction: "The court instructs the jury that the burden of proof

in this case is on the defendant, and unless you shall believe and find from the evidence that the defendant has proved the alleged gift by a preponderance of the evidence, you shall find the defendant guilty.''

In speaking of the instructions in the Tygard case the court said: ''The instructions heretofore quoted, as given on behalf of plaintiff, are in accordance with the views above expressed and are correct.''

In Foley v. Harrison, 233 Mo. 460, l. c. 542, 136 S. W. 354 the court quoted from Trenholm v. Morgan, 28 S. C. 268, a case involving an alleged gift *causa mortis*. A part of the quotation from the South Carolina case is as follows: ''We cannot say that the courts lean against gifts *causa mortis*, yet the evidence to establish them should be clear and unequivocal and will be closely scrutinized.''

In Townsend v. Schaden, 275 Mo. 227, 204 S. W. 1036, cited, supra, the Foley case was relied upon by appellant to support an assignment based on the instructions. In ruling on the question the court said: ''We are of the opinion that the above instructions properly declare the law in a case of this character, and that they presented both sides of the controversy fairly to the jury. The case of Foley v. Harrison, 233 Mo. 460, so strongly relied on by appellant, involved the question of *donatio mortis causa*. The court in that case was not discussing instructions, but the law as applied to that kind of an action. In considering the merits of the case, WOODSON, J., on page 582, said: 'It is conceded, by all the authorities, that a greater weight of evidence is required in this class of cases than is required in ordinary cases, in order to receive the sanction and approval of the courts of the country. This must be true in the very nature of the transaction, and is based upon a wise public policy.' We have no fault to find with the able and exhaustive opinion in the Foley case, as applied to the facts there considered, but do not deem the rule enunciated therein applicable to the facts under consideration here. The above instructions are, in our opinion, in line with the principles of law declared in the cases cited under proposition III, supra.''

In the prior opinion in this cause we held that instruction No. 4 was erroneous because it cast a greater burden upon defendant than required by law, and that a requirement of a finding by the greater weight or preponderance of the evidence is all that is justified in an instruction on the sufficiency of the evidence to establish a gift *inter vivos*. To support this conclusion we relied chiefly upon Townsend v. Schaden, supra. However, we pointed out in our former opinion that neither of the instructions set out in the opinion in the Townsend case is specifically on the sufficiency of the evidence.

In the motion for rehearing the recent case of Morley v. Prendiville, 295 S. W. (Mo. Sup.) 563 was called to our attention, and the

ruling in that case as affects plaintiff's instruction No. 4, is the principal reason moving us to grant the rehearing. The Morley case, like the cause in hand was an action to discover assets of an estate and involved an alleged gift *inter vivos*. In that case the trial court on behalf of the plaintiff gave this instruction:

"The defendant must not only prove to your satisfaction and beyond a reasonable doubt and by evidence clearly unequivocal that the said Jeremiah Prendiville, deceased, not only placed the said bonds or directed the defendant to place them in the safe deposit box of the defendant in the vaults of the Mercantile Trust Company, of the city of St. Louis, during the life of said Jeremiah Prendiville, but that, in placing or directing the said defendant to place the said bonds in the box rented by the defendant in the vaults of the said Mercantile Trust Company, the said Jeremiah Prendiville did make a gift of the said bonds to the defendant by use of words stated to the defendant clearly and unequivocally indicating his desire to make a gift of the said bonds, to the defendant and to relinquish all ownership or control over same, and unless you so find your verdict should be for the plaintiff."

This instruction was approved as properly declaring the law as to the character of evidence required to establish a gift *inter vivos*. It is contended by defendant that what the Supreme Court said in its approval of the instruction in the Morley case is *obiter*. Also it is argued that since the opinion in the Morley case was in division it does not become controlling if in conflict with the prior ruling en banc on the same point. And in this connection it is contended that the ruling in the Morley case as to the correctness of the instruction set out, supra, is contrary to the ruling en banc in Brooks v. Roberts, 281 Mo. 551, 220 S. W. 11. It is true that a subsequent ruling by the Supreme Court in division is not controlling if in conflict with a prior ruling en banc on the same point. [State ex rel. v. Reynolds, 278 Mo. 554, 213 S. W. 782; Hopkins v. American Car & Foundry Co., 295 S. W. (Mo. App.) 841.] In Brooks v. Roberts, supra, the court stated: "Nor does the term 'reasonable doubt' or similar expressions have any place in civil case instructions." Brooks v. Roberts was an action to quiet title and the language quoted therefrom was used in considering an instruction as to identity of a person named in the chain of title. We are not persuaded that the ruling in Brooks v. Roberts conflicts in any manner with the ruling in the Morley case as to the instruction on the character of evidence required to establish a gift *inter vivos*. Nor do we agree that what is said in the Morley case as to the instruction is *obiter*. In our opinion we are bound by the ruling in the Morley case and we think that the ruling there made clearly supports plaintiff's instruction No. 4.

We find no ground to support the order granting a new trial except as to the sufficiency of the evidence on the issue of the alleged gift of the $1000 item. The order granting the new trial should be affirmed so far as concerns the $1000 item. The verdict as to the two notes and the $45.25 item should be reinstated and judgment thereon held in abeyance until the final determination of the cause when one judgment will be rendered disposing of the entire cause. [See In re Estate of Huffman, 132 Mo. App. 44, l. c. 66, 111 S. W. 848; Yahlem Motor Co. v. McCord, 299 S. W. (Mo. App.) 49.]

The order granting the new trial is affirmed as to the $1000 item and reversed as to the two notes and $45.25 item, and the cause is remanded with directions to proceed as above indicated. *Cox, P. J.,* and *Bailey, J.,* concur.