246 S.W.2d 765 (1952)
RIDENOUR et al.
v.
DUNCAN et al.
No. 42193.
Supreme Court of Missouri, Division No. 2.
February 11, 1952.
Motion for Rehearing or to Transfer to Denied March 10, 1952.
*766 Clarence C. Chilcott, Earl Dietz, Kansas City, for appellants.
Myer M. Rich, Isadore Rich and Rich & Rich, all of Kansas City, for respondents.
Motion for Rehearing or to Transfer to Court En Banc Denied March 10, 1952.
BOHLING, Commissioner.
Hazle Duncan Ridenour, Joyce Snyder and Raymond Duncan instituted this suit against Robert Earl Duncan (plaintiffs' uncle) and Florence Duncan, his wife, and Eliza W. Herod and Elmer J. Fults, to cancel certain deeds, conveying the property commonly known as 907 Prospect Avenue, Kansas City, Missouri, and the furniture and furnishings therein, and a deed of trust thereon, and to decree the title to the property in the Estate of Minnie Duncan Goodwin, Deceased, (plaintiffs' paternal grandmother) and for general equitable relief.
The several answers of defendants Duncan and Fults denied the material allegations of plaintiffs' petition. The answer of Eliza W. Herod denied the allegations of plaintiffs' petition, and set up a cross-claim wherein, alleging she was an innocent purchaser for value of said property, she prayed the court to quiet the title to said real estate and decree and adjudge her to be the owner thereof and for general equitable relief. Eliza W. Herod purchased the property from Robert Earl and Florence Duncan after Mrs. Goodwin's death and gave a deed of trust back on the property to secure the unpaid balance of the purchase price.
The court found the issues in favor of the defendants; that the plaintiffs were not entitled to the relief prayed, and, by its judgment, dismissed plaintiffs' petition and awarded defendants their costs, but entered no decree or judgment quieting the title under Eliza W. Herod's cross-claim.
Plaintiffs filed a motion for new trial and the court sustained said motion. Defendants appeal from said order, R.S.1949, § 512.020, V.A.M.S., and contend that the court exceeded its jurisdiction in entering the order awarding a new trial; that plaintiffs failed in their proof; that plaintiffs are not entitled to equitable relief, not coming into court with clean hands; and that there existed a valid express trust, fully executed, in the property in favor of defendants Robert Earl and Florence Duncan which was not subject to attack by plaintiffs.
The judgment was entered April 13, 1950. Plaintiffs' motion for new trial was filed April 21, 1950. The order granting a new trial was entered July 13, 1950, and recited that plaintiffs' motion for new trial "is by the court taken up, fully heard and considered, and by the court sustained for the reason that the judgment as entered does not adjudge the rights or interests of the parties to the unpaid portion of the note given by Eliza W. Herod."
R.S.1949, Section 510.370, V.A.M.S., provides: "Not later than thirty days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party * * *." See Sup.Ct. Rule 3.25, 2 R.S.1949, p. 4112. Orders granting a new trial are to specify the grounds on which the new trial is granted, §§ 510.330 and 510.370, Id., and motions for new trial not passed on within ninety days after filing are deemed denied for all purposes. (§ 510.360, Id.) Defendants contended the court exceeded its jurisdiction because the new trial was granted on the court's own initiative more than thirty days after the entry of judgment for a specified ground not set out in plaintiffs' motion for new trial. Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539[7]; Birmingham v. Kansas City Pub. Serv. Co., 361 Mo. 458, 235 S.W.2d 322, 324[1]; Wooten v. Friedberg, 355 Mo. 756, 198 S.W.2d 1, 5[2]; Rozell v. Rozell, Mo. App., 229 S.W.2d 700, 702[2, 3]; 2 Carr. Mo. Civil Procedure 37, § 857. Consult, among others, under the prior code, Warden v. Southards, 238 Mo.App. 692, 187 S. W.2d 510, 512, and cases cited.
Plaintiffs' motion for new trial did not assign as a reason therefor that the judgment failed to adjudicate the interests of the parties in the purchase price paid by Eliza W. Herod for the property or to any unpaid portion thereof evidenced by her note given in connection with such purchase. Plaintiffs in their pleadings proceeded upon the theory that the property *767 was part of the estate of Minnie Duncan Goodwin, deceased, and this position was maintained in their motion for new trial except insofar as it was affected by evidence adduced to the effect S. E. Duncan, their father, paid $450 on the cash payment when David J. Stephenson conveyed title to him on October 26, 1946.
We conclude that the order granting plaintiffs a new trial was on the court's own initiative and, not having been made within thirty days after entry of the judgment, the court exceeded the authority conferred upon it by § 510.370, supra. Plaintiffs do not cite authority to sustain their contention that the ground specified by the court for granting the new trial was within the assignments in their motion for new trial to the effect that the judgment was "against the evidence and the greater weight of the evidence" and was "in favor of the wrong parties."
Plaintiffs stress other grounds assigned in their motion as reasons for sustaining the order granting a new trial. This they are privileged to do. Cole v. St. Louis-S. F. R. Co., 332 Mo. 999, 61 S.W.2d 344, 347[5]; Craton v. Huntzinger, Mo. Sup., 187 S.W. 48, 53[9, 10]; Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678, 683[8]; Smith v. Kansas City Pub. Serv. Co., 328 Mo. 979, 43 S.W.2d 548, 554[15, 17].
Mrs. Minnie Duncan Goodwin, formerly Mrs. Minnie Duncan, was the mother of Sidney Earnest Duncan and Robert Earl Duncan, who are referred to in the record as "S. E." or "Earnest" and "Earl," respectively. Sidney predeceased the mother. He was the elder of the two sons and plaintiffs are his children. Under a will dated August 28, 1940, of Mrs. Goodwin offered in evidence, "Earl Duncan" and "Earnest Duncan" were named residuary beneficiaries to whom the property here involved would pass in equal shares. Consult R.S. 1949, §§ 468.310, 468.010, V.A.M.S.
Plaintiffs' theory is that Mrs. Goodwin died seized and possessed of the property and that they have an undivided one-half interest therein. Defendants claim the title to the property stood in the names of Robert Earl Duncan and Florence Duncan, plaintiffs' uncle and his wife, at the time of Mrs. Goodwin's death.
On October 26, 1946, Mrs. Goodwin and S. E. Duncan came to the office of Era Bond (a real estate agent, in his seventies) where Sidney, as purchaser, and David J. Stephenson, as seller, contracted for the purchase and sale of the property for $5,750. On the same day Stephenson deeded the property to "S. E. Duncan." This deed was recorded October 28, 1946. Bond, defendants' witness, testified Sidney paid $450 and Mrs. Goodwin paid the balance of the down payment (we understand a total of $3,000), and Sidney gave back a deed of trust on the property to Stephenson for the unpaid purchase price.
It is not disputed that title was taken in the name of S. E. Duncan to deprive Mrs. Goodwin's husband, Henry W. Goodwin, of any marital rights in her property should she predecease him.
On said October 26, 1946, "S. E. Duncan" executed and acknowledged a warranty deed conveying the property, with the grantee's name in blank, which deed was left with Bond. Bond testified that Mrs. Goodwin thereafter came to his office and told him that Sidney was ill and could not live "and I don't want any difficulty about that title. I don't want my husband to have anything to do with it;" that thereupon Elmer J. Fults' name was inserted as grantee in S. E. Duncan's blank deed and the deed recorded. This deed was recorded June 6, 1947. At the same time Fults executed his warranty deed conveying the property with grantee's name in blank. Fults was a "straw party" and Bond paid him $5.00. Fults' deed was given to Bond and put in his safe. Bond testified that Fults was holding title for "S. E. Duncan and Mrs. Goodwin."
S. E. Duncan died July 3, 1947.
A five-apartment building was on the real estate and Mrs. Goodwin, with her husband, for some time prior to and at the time of her death lived there. She collected the rents and managed the building. She paid on the debt secured by the deed of trust to Stephenson each month and there was evidence that these payments, as well as *768 taxes and repairs on the property, were made from rental collections.
In a letter addressed to Mr. and Mrs. Earl Duncan, postmarked January 9, 1948, Mrs. Goodwin, so far as material here, stated: "* * * dear children for my sake don't ever speak of this for it would make trouble for me with my grand children as well as my husband I am leaving every thing to you son if I have any thing at my death and truly hope I have * * *."
Earl Duncan testified he never talked to his mother about this property. Minnie Duncan Goodwin died March 18, 1949, and Earl was notified of her death at 8 o'clock that morning. He could not locate Mr. Goodwin at 907 Prospect, and went to the undertaking parlor where Mrs. Goodwin's body had been taken. He then went to Era Bond's office. Bond and he were not acquainted. Earl Duncan testified that Bond got Fults' deed out of the safe; that his and his wife's names were on the deed and this was the first he knew of the deed being in his name; that he had no conversation with Bond at that time in regard to disposing of the property; that he took the deed to his attorney's office; that he did not have "any use" for Mr. Goodwin and wanted to sell the property; that he went back to Bond's office that afternoon and told him to sell the property, authorizing him to sell for $3,800 net, Bond to receive all above that amount; and that he signed a deed in blank to the property.
The deed from Fults to Earl Duncan and his wife is dated March 17, 1949, the day before Mrs. Goodwin's death, as is Fults' acknowledgment. It was recorded March 26, 1949. Fults, however, executed the deed, according to the other evidence in the case, on June 6, 1947.
Defendant Eliza W. Herod contracted on March 25, 1949, to purchase the property from the Duncans for $4,400, paying $2,200 cash and giving her note for $2,200, secured by a deed of trust on the property to Earl Duncan and Florence Duncan. The deed from the Duncans to Mrs. Herod is dated March 18, 1949, and appears to have been acknowledged on March 28, 1949. This deed was recorded March 31, 1949. The $2,200 deed of trust bears date of and was acknowledged on March 29, 1949. It was recorded March 31, 1949. An attorney's opinion on the abstract of title addressed to Mrs. Herod and Mr. Bond and dated April 2, 1949, approved the title of Mrs. Herod, subject to the deed of trust; and stated: "The name of Henry W. Goodwin does not appear in this abstract in any way." We think we need not develop the facts and contentions connected with this transaction for reasons to be stated hereinafter.
The record discloses that a suit over the property here involved instituted by Henry W. Goodwin on April 7, 1949, against Robert Earl Duncan and Florence Duncan and Eliza W. Herod was settled under an agreement dated September 20, 1949, providing for the payment by said defendants to said Goodwin of $200 and the dismissal of said Goodwin's petition with prejudice.
The date when the names of the grantees were inserted in the blank deed executed by Fults is important; that is, whether prior or subsequent to the death of Minnie Duncan Goodwin on March 18, 1949. Under the record defendants' witness Bond was the only person having any authority from any beneficial owner to fill in any blanks in the deed. The notary who took the acknowledgment and Fults did not testify. The Fults' deed, as stated, bears date of and was acknowledged on March 17, 1949. It was filed for record on March 26, 1949. We quote from Bond's testimony.
On direct examination, he testified Mrs. Goodwin told him: "`In case of my death it goes to Earl Duncan.'"
On cross-examination he testified: "Q. When from then [March 18, 1949, the date of Mrs. Goodwin's death] did you do it [put the names of the grantees in the Fults' deed]? A. I would say that three days afterward I turned the deed over to Earl Duncan. He went down and put it on record."
"Q. Mr. Bond, Mrs. Duncan [meaning Mrs. Goodwin] died on the 18th of March. What is your best judgment and knowledge as to when you turned the deed over to Robert Duncan? A. About the 20th, about two days after."
*769 "Q. And it [the Fults' deed] was recorded March 26, 1949. How did you come to date it the 17th of March? A. I don't know. * * *
"Q. Was she [Mrs. Goodwin] dead when you talked to Earl? A. Yes, she was.
"Q. When was that? When was Earl's name put in that deed? A. You said the 17th, but I don't know."
"Q. When was his name put into that deed? A. The notary put that in when it was turned over to Earl Duncan.
"Q. Do you know what day that was? A. No, I don't.
"Q. Was his mother living them? A. She was dead.
"Q. She was dead? A. It was a couple of days after her death. She had given me instructions to turn it over to Earl. * *
"Q. Durall [the notary] put Robert Earl Duncan's name in the deed from Fults?
A. That's right, as well as I recollect."
On redirect examination he testified that the last time Mrs. Goodwin came in to make a payment on the Stephenson deed of trust (the date is not stated) she said: "`I think you just as well put Earl Duncan's name on that deed.' I said, `All right.' She said, `If anything happens, could you get another deed? If I should sell that place, could you get another deed from Fults?' I said, `I think so. I have already paid him;' and at that date I think I put Earl Duncan's name on the deed;" and also his wife's name.
On recross-examination he testified that if he stated Earl Duncan's name was put on the deed after his mother died, "I didn't understand you. I think Earl Duncan and his wife's name was put on that deed before."
The trial commenced on December 20, 1949, and after the evidence was in, was continued until February 24, 1950. Defendants recalled Bond to the stand on February 24, 1950, and offered to prove that Mrs. Goodwin left instructions with Bond to keep the Fults deed in blank "and have it filled out in the name of any grantee she might designate before she died and if she died without designating a grantee, that he fill in her son's name, Robert Earl Duncan, and his wife, that is all I am attempting to show. That is what I want to prove." The offer was refused on the ground it had been covered and was repetitious.
Then on cross-examination, witness Bond closed the case thus: "Q. When was the grantee's name put in this deed? A. When I notified him after his mother died. I never met him before."
When the evidence came in from defendant Earl Duncan that he paid no consideration and he and his wife, grantees in the Fults' deed, were claiming title as a gift, they had the burden of going forward with the evidence certainly to the extent of establishing sufficient facts necessary to the validity of said deed to rebut other evidence in the case defeating the claimed gift. Wilkerson v. Wann, 322 Mo. 842, 16 S.W. 2d 72, 75[5], 77(II).
Where the gift is not asserted until after the death of the donor, Stein v. Mercantile Home Bank & Trust Co., 347 Mo. 732, 148 S.W.2d 570, 572[3], states: "`Clear, cogent and convincing' describes the standard which the testimony must meet to such satisfaction so `as to leave no room for a reasonable doubt in the mind of the chancellor.'" See cases there cited and, among others, St. Louis Union Trust Co. v. Busch, 346 Mo. 1237, 145 S.W.2d 426, 430[3].
A completed gift inter vivos operates during the donor's lifetime. There must be a delivery and acceptance, and an intention on the part of the donor to part with his right in and dominion over the property immediately and irrevocably. Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, 144[20]; Genteman v. Sutter, Mo.Sup., 215 S.W.2d 477, 479[1-4]; Martin v. First Nat. Bk., 206 Mo.App. 629, 227 S.W. 656, 657[1, 2]; Smith v. Smith, Mo.App., 192 S.W.2d 691, 698[6-9], citing cases.
Language, written or spoken, expressing an intention to give does not constitute a gift unless the intention is executed by a complete and unconditional delivery of the subject matter or a delivery of a proper written instrument evidencing the gift. Napier v. Eigel, 350 Mo. 111, 164 S. W.2d 908, 912[5], citing Trautz v. Lemp, supra.
*770 A donor may deposit an executed deed to a named grantee with a third person for delivery to the grantee after the donor's death, relinquishing all dominion and control over the deed, and the third person, representing the grantee, may accept the delivery on behalf of the grantee. Potts v. Patterson, 355 Mo. 154, 195 S.W. 2d 454, 456[2, 3], citing authority; Noe v. Noe, 359 Mo. 867, 224 S.W.2d 77, 79[3]; Wilcox v. Coons, Mo.Sup., 241 S.W.2d 907, 912[3]; Mendenhall v. Pearce, 323 Mo. 964, 20 S.W.2d 670, 675[6, 7].
A deed executed in blank may be filled in in conformity with parol authority conferred upon another. Thummel v. Holden, 149 Mo. 677, 682, 684, 51 S.W. 404, 405; Edmonson v. Waterston, 342 Mo. 1082, 119 S.W.2d 318, 321 [6]; Holliday v. Clark, Mo.Sup., 110 S.W.2d 1110, 1111[2, 3]; Cheney v. Eggert, 197 Mo.App. 649, 199 S.W. 270[1, 2]. But, a deed "in which a blank has been left for the name of the grantee is no deed and is inoperative as a conveyance so long as the blank remains unfilled." 16 Am.Jur. 483, § 79; 26 C.J.S., Deeds, § 25, p. 206; Cheney v. Eggert, supra; Allen v. Withrow, 110 U.S. 119, 128, 3 S.Ct. 517, 523, 28 L.Ed. 90.
We think the greater weight of the evidence in the case, hereinbefore detailed, is to the effect that the names of Robert Earl Duncan and Florence Duncan were not inserted in the blank deed until after the death of Mrs. Goodwin, and what was said in somewhat similar circumstances in Holliday v. Clark, Mo.Sup., 110 S.W.2d 1110, 1111[4] is applicable: "Moreover, the general rule in this state and elsewhere is that death of the principal terminates the authority of his agent to act for him, when such authority is not coupled with an interest [citing authority]. If, as held in Givens v. Ott [222 Mo. 395, 410, 121 S.W. 23, 26], `the death of [the grantor] removed all authority of [his agents] and all others to deliver the deed [complete in all respects including a named grantee] thereafter,' then certainly the death of the holder of the blank deed herein `removed all authority' of Clark (even if he ever had any authority) to write the name of a grantee in the deed and to make the deed effective by delivery thereof to such grantee designated in the deed by him thereafter." See the cases cited, and Gill, Missouri Titles, 3rd Ed., 93, § 74b.
Mrs. Goodwin never completed any intended gift of the property to Earl Duncan and Florence Duncan, his wife. Fults was a mere straw, having no interest in the property. Bond, at best, was but her agent, and never had any interest in the property. Mrs. Goodwin was the beneficial owner of her interest with the equitable title. There is no affirmative evidence that she authorized Bond to name Florence Duncan as a grantee. Consult Church v. Combs, 332 Mo. 334, 58 S.W.2d 467, 469[3, 4]. There was no delivery of the deed until after Mrs. Goodwin's death. Mrs. Goodwin was and had been for sometime in possession of and living in the property at the time of her death. Mrs. Goodwin's statements to Bond when she made her last payment on the debt due Stephenson indicate that she was considering the sale of the property and retaining her dominion over it and the deed. There was testimony that in 1948 prospective purchasers were shown the property and Mrs. Goodwin was holding it at $6,750. Her letter to Earl Duncan evidenced a testamentary intent that he receive her property at her death. Coles v. Belford, 289 Mo. 97, 232 S.W. 728. The evidence does not meet the standard required to establish a gift asserted after the death of the donor. Mrs. Goodwin was the beneficial owner, having the equitable title of her interest in the property at her death, as between plaintiffs and defendants Duncan and Fults.
What we have said adversely disposes of defendants' contention that "Minnie Duncan Goodwin created a valid express trust, which was fully executed, and not subject to attack by respondents." Whatever her intention was, Mrs. Duncan never executed it. The facts distinguish the instant case from defendants' cases: Hall v. Farmers and M. Bank, 145 Mo. 418, 46 S.W. 1000; Smith v. Hainline, Mo.Sup., 253 S.W. 1049, 1051[2]; Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 204, 205, 5 L.Ed. 589, 597; Ketcham v. Miller, Mo.Sup., 37 S.W.2d 635, 639[8]. Nor do we think defendants' contention that plaintiffs have no standing in a court of equity because they do not come *771 into court with clean hands is to be sustained. Mrs. Goodwin had not parted with her beneficial interest in the property at the time of her death.
Defendant Eliza W. Herod, setting up title in herself in her cross-action, was entitled to an adjudication of her existing title, and if she have no title the court should so adjudge or decree. Pettus v. City of St. Louis, Mo.Sup., 242 S.W.2d 723, 729[6, 7]; Deeds v. Foster, Mo.Sup., 235 S.W.2d 262, 265[4, 5]; Hansen v. O'Malley, 356 Mo. 908, 204 S.W.2d 281, 283[4, 5]; Armor v. Frey, 226 Mo. 646, 664, 126 S.W. 483, 487. The instant judgment did not adjudge whether defendant Herod did or did not have title. The trial court should rule the issue in the first instance.
The plaintiffs are entitled to a new trial. It is so ordered, and the cause is remanded.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.
All concur.