## HACH v. ROLLINS et al., Appellants.

### Division One, November 12, 1900.

1. **Dower:** FRAUDULENT CONVEYANCE OF LAND BEFORE MARRIAGE: HOME-STEAD. A widow has dower in land fraudulently conveyed by her husband to his children before her marriage to him, such deed being vitiated by the fraud, and her rights in the land and the homestead rights of her minor children being the same as if it had never been made.

2. ———: ———: DEED MADE ON EVE OF MARRIAGE. The wife can maintain an action to set aside a voluntary conveyance by the husband made, without her knowledge or consent, on the eve of her marriage, for the purpose of defeating her marital rights.

3. ———: ———: WIDOW AS WITNESS. The widow is not a competent witness to show that a deed by her husband before marriage was made by him through fraud for the purpose of cheating her out of dower and homestead in his property. But although she was at the trial permitted to testify at length as to such matters, yet if such fraud is established by the testimony of other witnesses, the judgment in her behalf will not be disturbed.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

*Geo. L. Edwards* and *J. J. O'Donohoe* for appellants.

(1) Plaintiff's petition does not state facts sufficient to constitute a cause of action. R. S. 1889, sec 4513; R. S. 1899, sec. 2933; Gross v. Lange, 70 Mo. 45; Garrison v. Young, 135 Mo. 203. (2) The deed executed by Andrew Hach to the defendants Wilhelmine Rollins and Louise Anderson on the sixth day of March, 1878, was certainly

valid and sufficient, at least between said grantor and defend-ants, to vest in the defendants all the right, title and interest of said grantor in the real estate in said deed described. Such being the case, the plaintiff never at any time had a dower interest, inchoate or otherwise, in said premises. Wagner's Statutes 1872, sec. 1; Frank v. Caruthers, 108 Mo. 573 and 574; Bobb v. Bobb, 89 Mo. 419; Weiss v. Hietkamp, 127 Mo. 29; 2 Devlin on Deeds (2 Ed. 1897), sec. 834. (3) The plaintiff was incompetent to testify as to contracts and transactions had with her deceased husband. R. S. 1889, sec. 8918; R. S. 1899, sec. 4652.

*L. M. Conkling* for respondent.

(1) If a person contract to marry another, and represents to the other that he owns property, in his own name, and after such contract and before the marriage, directly or indirectly disposes of or conveys away his property, without the knowledge or consent of the other contracting party, it is a fraud upon the marital rights of the other or innocent party, and a court of equity will grant relief from the fraud, upon proof of the contract having been made before the conveyance and the promise is finally fulfilled by a subsequent marriage. Schouler on Domestic Relations, secs. 181, 12, 259 (4 Ed. 1889); 2 Parsons on Con., p. 69 (5 Ed.); Smith v. Culbertson, 9 Rich. 106; Martindale on Conveyance, sec. 37, p. 42; 5 Johns. Chan. 382; 7 N. J. Eq. 515; 8 Bush's, 201; Duncan's App., 43 Pa. St. 167; 57 Pa. St. 120; 3 Ired. Eq. 487; 10 Ind. 191; Williard's Ex. (2 Ed.), pp. 211, 212, 213, 214; Gibson v. Carson, 3 Ala. 421; Gainor, 26 Iowa 337; 21 Kan. 521; Cranson v. Cranson, 4 Mich. 230; Smith v. Smith, 6 N. J. Eq. 515; Jenny v. Jenny, 24 Vt. 324; Boone on Marriage and Divorce, chap. 10, sec. 44; 2 Beav. 22; Goodard v. Snow, 1 Russ.

485; Linker v. Smith, 4 Wash. C. C. 224; McAffee v. Ferguson, 9 B. Mon. 475; Tucker v. Andrews, 13 Me. 124; Strong v. Menzies, 6 Ired. Eq. 544; Robinson v. Buck, 71 Pa. St. 386; Gregory v. Winston, 23 Gratt. 102. All such disposal or conveyance of property is fraudulent and voidable. Howard v. Hooker, 2 Ch. Rep. 81; Taylor v. Pugh, 1 Hare 608; Freemann v. Hartman, 45 Ill. 57; Tucker v. Andrews, 13 Me. 124; McAffee v. Ferguson, 9 B. Mon. 475; Terry v. Hopkins, 1 Hill. Ch. 1; Manes v. Durant, 2 Rich. Eq. 404. (2) It is a fraud for a man on the eve of marriage, unknown to his intended wife, to, defeat her dower by secretly disposing of and conveying away his property. 14 Am. and Eng. Ency. of Law (2 Ed.), p. 252; Dearmond v. Dearmond, 10 Ind. 191; Petty v. Petty, 4 B. Mon. (Ky.) 217; 39 Am. Dec. 501; 6 N. J. Eq. 515; 50 How. Pr. (N. Y.) 410; 10 Hun (N. Y.) 194; Baird v. Stearne, 15 Phila. (Pa.) 339; 39 Leg. Int. (Pa.) 314; Tate v. Tate, 1 Dev. and B. Eq. 21 N. C. 22.

MARSHALL, J.—This is a bill in equity by the widow of Andrew Hach to set aside a voluntary conveyance, made by the husband to his children by his first marriage and *before* his marriage to the plaintiff, on the ground that it is a fraud upon the plaintiff's inchoate right of dower and to the homestead.

Andrew Hach, a man sixty-seven years of age, and a widower, with grown, married children, owned a homestead on the corner of Tenth and Mound streets, in St. Louis. Early in the year 1877, he courted the plaintiff, who was then a girl of twenty-one years of age. As an inducement to her to agree to marry him, he promised her that he would take her to live in his homestead, which they would occupy as long as he lived and after his death the property should go to her and whatever children she might have. She accordingly promised to marry him. Under his promise to marry her,

he debauched her, in consequence of which she became pregnant. Notwithstanding her importunities he refused to carry out his promise and make her his wife. Her child was born February 12, 1878. On the sixth of March, 1878, without plaintiff's knowledge or consent, he conveyed the homestead to his two daughters, the defendants Wilhelmine Rollins (nee Hach) and Louise Anderson (nee Beyerback) for an expressed consideration of one thousand dollars, but in reality the conveyance was purely voluntary and without any money consideration. Hach and his daughters continued to occupy the homestead and he paid substantially all the expenses as long as he lived. After the birth of her child Hach still refused, though often repeating his promise, to marry the plaintiff, so she sued him for breach of his contract. Then he married her on the twenty-eighth of August, 1878, and she dismissed her suit. He took her to live with him in his homestead, and his children continued to occupy portions of the house. The plaintiff ascertained, accidentally, several years after her marriage that Hach had conveyed the property to his daughters before her marriage, and demanded of him an explanation therefor and reminded him of his prior promise to her. He lulled her into a state of security by assuring her that the deed amounted to nothing, that he was still the "boss" of the place, that his daughters would not dare to assert any claim to the property and that his promise to her would be carried out. They continued to occupy the house, the children by the first marriage continued to occupy, with his permission, various parts thereof, for over seventeen years, when he died intestate in May, 1894. She bore him four children, three of whom survive, and all are minors. The child born before her marriage died when only a few years old. He left no property of any kind except this homestead. For about three years after his death the plaintiff and her children and the children by the first marriage con-

tinued to occupy the house just as they did during his life-time. During all these twenty years neither of the daughters asserted any title under the deed aforesaid. But on the contrary they and their father admitted to many persons that the deed was made to cheat the plaintiff out of any interest in the property which she would otherwise acquire by virtue of her marriage to him. Hach said, at least once, that he did it to get even with the plaintiff for suing him for breach of contract. Three years after his death the two daughters notified the plaintiff to vacate. She then instituted this suit to have the deed cancelled for fraud upon her inchoate right of dower and in the homestead. The answer admitted that defendants were in possession (and so was the plaintiff) and denied all fraud. Upon these facts appearing to the court, a decree was entered declaring that the deed in nowise affects the dower rights of the plaintiff or the rights of her children in the land, and cancelling the deed. The defendants appeal.

## I.

The first question in this case is, has plaintiff any interest in the land?

Our statute (sec. 2933, R. S. 1899) provides: "Every widow shall be endowed of the third part of all lands whereof her husband, or any other persons to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life." It is accordingly argued that Hach did not have an estate of inheritance in this land at any time during the marriage and therefore the plaintiff has no dower interest therein.

Ordinarily this test determines the particular case.

But fraud vitiates everything and to the eye of a court of chancery the conditions existing before the perpetration of the fraud continue to exist the same as if the fraudulent act had never been committed.   So if the deed from Hach to his daughters was concocted and executed as a fraud upon the plaintiff her rights are the same as if the deed had never been made, and if this deed had never been made Hach would have been seized of an estate of inheritance in this land  during the marriage, and upon his death the plaintiff would be entitled to dower therein.

Similar transactions to this are not without precedents in the law.   At common law a husband was entitled to the possession of the wife's real property during coverture, and to curtesy therein after her death, by way of compensation for his liability for her ante-nuptial debts and post-nuptial support.   Therefore it was held that he was entitled to any property she owned before marriage and that her conveyance thereto, without his knowledge or consent, on the eve of marriage, was a fraud on his rights which he had the right to redress by appropriate action to set aside the conveyance. And as a corollary of this right of the husband, the wife has been held entitled to maintain an action to set aside a conveyance by the husband, without her knowledge or consent, on the eve of her marriage, made to defeat her marital rights, notwithstanding she never was liable for his ante-nuptial debts or post-nuptial support.

The rule as to the wife is thus stated in 14 Am. and Eng. Ency. of Law (2 Ed.), p. 252.   "An inchoate right of dower in lands is a subsisting and valuable right which will be protected and preserved, and it is as much a fraud for a man on the eve of marriage, unknown to the intended wife, to make a voluntary conveyance for the purpose of defeating the interests which she would acquire in his estate by marriage, as it is for a debtor who contemplates contracting a debt to

voluntarily dispose of his property in order to defeat the efforts of future creditors to secure its payment."

"The husband's interest in the estate of his wife is like-wise within the protection of the statute" (meaning the statute as to fraudulent conveyances, 13th Elizabeth, Ch. 5 and 29th Elizabeth, Ch. 5); "and a gift made secretly by a woman before marriage, with intent to defeat the rights of her prospective husband, will be set aside as fraudulent." Ibid.

The text is amply supported by the adjudicated cases: Dearmond v. Dearmond, 10 Ind. 191; Petty v. Petty, 4 B. Mon. 215; Black v. Jones, 1 A. K. Marsh. 230; Smith v. Smith, 6 N. J. Eq. 515; Youngs v. Carter, 50 How. Pr. Rep. (N. Y.) 410; Baird v. Stearne, 15 Phila. 339.; Swaine v. Perine, 5 Johns Ch. l. c. 488; Cranson v. Cranson, 4 Mich. 230; Brown v. Bronson, 35 Mich. 415; Duncan's Appeal, 43 Pa. St. 67; Jenny v. Jenny, 24 Vt. 325; Tucker v. Andrews, 13 Me. 124; Robinson v. Buck, 71 Pa. St. 386; Gregory v. Winston, 23 Gratt. 102; Chandler v. Hollingsworth, 3 Del. Ch. 99.

Mr. Washburn, in his valuable work on real property, vol. I (5 Ed.), p. 227, collates many cases supporting this doctrine, and points out that the rule obtains in New York, Kentucky, Tennessee, Michigan, California, Vermont, Iowa, Missouri, Mississippi and New Jersey.

And the same author (vol. 3, p. 359) refers to the case of Chandler v. Hollingsworth, 3 Del. Ch. 99, decided by Chancellor BATES, who collated the English and American cases, as the leading case on the subject, and states, with emphasis, the conclusion reached by the chancellor, "that for a man or woman on the eve of marriage, to convey away his or her estate, if done without a valuable consideration, and not disclosed to the other party before the marriage, would be so far a fraud *per se* upon the marital rights of the other party, that equity would set it aside, so far as it conflicted with these rights, although the party so defrauded, did not

know whether the person he or she was about to marry, had been possessed of the property in question or not."

The rule is also stated, both as to husband and wife, in Schouler's Domestic Relations (4 Ed.), sec. 181.

The cases cited herein have been selected because of their close resemblance to the case at bar. All of them except Duncan's Appeal, Tucker v. Andrews, Robinson v. Buck, Gregory v. Winston, and Chandler v. Hollingsworth, were suits by the wife, arising under circumstances almost identical with this case, and the cases above excepted were suits by the husband for like reasons.

In Crecelius v. Horst, 4 Mo. App. 419, the husband, during coverture, with his own money, purchased property and had it conveyed to trustees for his benefit for life, remainder to his daughter, and the suit being by the widow against the daughter to set aside the conveyance and for assignment of dower, the St. Louis Court of Appeals said: "It seems, however, to be understood on both sides that, the husband having furnished the purchase money, if he directed the mode of conveyance with special intent to defraud the wife of her dower, a use was raised in him to which the dower would attach, if otherwise within the terms of the statute." And accordingly the widow was held entitled to dower, notwithstanding the husband was not technically, though he was in equity, seized of an estate of inheritance during the marriage.

The circuit court was right, therefore, in this case in setting aside this fraudulent deed, which, of course, left the title in Hach, and entitled the plaintiff to her right to dower therein, and as it was concededly his homestead she is also entitled to homestead rights therein.

## II.

The circuit court permitted the plaintiff to testify as a witness and she detailed fully all the facts herein stated, in-

cluding the inducement as to what interest she and her children should have in the property, which Hach held out to her to agree to marry him, and this is assigned as error.

At common law a party in interest was incompetent as a witness. [1 Greenl. on Evid. (16 Ed.), sec. 328 *b*.] A husband or wife was incompetent as a witness when the other was a party or interested, and this extended to matters occurring before the marriage and the disqualification continued after the death of the one and after a divorce. [Ibid., secs. 333 *c*, 334, 335, 336 and 337.] The survivor of a transaction with a deceased person was also disqualified as a witness. [Ibid., sec. 333 *b*.] The disqualification by reason of interest has been removed by our statute. [Sec. 4652, R. S. 1899.] But the disqualification of the survivor remains at it was at common law. [Curd v. Brown, 148 Mo. l. c. 95, and cases cited.] The common law disqualification of a spouse has been abolished in three respects (not applicable here), by section 4656, Revised Statutes 1899. At common law there were certain exceptions to the disqualification of the wife as a witness against her husband, which were allowed from the extreme necessity of the case, because no other witness could furnish the testimony and because it was necessary for the protection of her life and liberty. [I Greenl. on Evid. (16 Ed.), sec. 343.] This doctrine of necessity prevails in Missouri, and the rule is established that a husband or wife is a competent witness, *ex necessitate*, as to conversations between them in order to expose a fraud that was prepetrated by the husband on the wife. [Moeckel v. Heim, 134 Mo. l. c. 580, following and approving Utassy v. Giedinghagen, 132 Mo. 53, and Henry v. Sneed, 99 Mo. 407.]

The plaintiff was not therefore an incompetent witness by reason of her coverture to testify as to the fraud perpetrated by Hach upon her, especially as to conversations had

between them as to which no other witness could supply the testimony.    It was not necessary to prove that he held out to her that she should live with him in his homestead while he lived, and afterwards, for she is entitled to dower and homestead rights therein whether she knew he owned any property or not.    Nor was it necessary for her to testify as to any reason for not bringing her action sooner, for the cases herein cited fully support the proposition that being in possession she could bring this action at any time, whether during or after the termination of her coverture.    The plaintiff was, however, an incompetent witness for any purpose, because the other party, the husband, was dead.    Ordinarily this would result in a reversal of the case, but such is not necessarily the result in this case, for every essential fact necessary to her recovery in this case was testified to by Mrs. Louise Anderson, Mrs. Kate Hach, Mrs. Wilhelmine Rollins, Mrs. Frances Kutter and Mrs. Kate Sexton, and embraced conversations with and admissions by the deceased and his two daughters, defendants herein, which fully established the fraud charged upon the plaintiff's rights, and that they rather seemed to enjoy how nicely the plaintiff had been deprived of her marital rights in this property, and showed that they labored under the mistaken idea that Hach had so arranged the matter that by leaving her only a dollar at his death she would have no claim to the property.    Hence the result would necessarily have been the same if the court had excluded the plaintiff as a witness entirely, and as this is a proceeding in equity this court will exclude her incompetent testimony admitted by the trial court and decide the case upon the facts properly in evidence.

A most exhaustive and critical examination of this case necessarily leads to the conclusion that the judgment of the circuit court is right, and therefore it is affirmed.

All concur.