MAUDE BRAGG, Plaintiff-Appellant, v. CHARLES G. ROSS, MARY TIPTON ROSS, MAGGIE ALLMAN, HATTIE LOVELACE, EUNICE OLIVER, BEATRICE JACKSON, MARY SIMMS MUZZELL, WALTER BRAGG, GLASGOW BRAGG and JAMES M. REEVES, Trustee, Defendants, CHARLES G. ROSS and MARY TIPTON ROSS, (sole) Respondents.—162 S. W. (2d) 263.

Division One, April 16, 1942.

Rehearing Denied, June 3, 1942.

*Von Mayes* and *N. C. Hawkins* for appellant.

*C. G. Shepard* and *Ward & Reeves* for Charles G. Ross and Mary Tipton Ross.

HAYS, J.—This is a suit in equity brought by Maude Bragg, widow of C. E. Bragg, deceased, against Charles G. Ross, Mary Tipton Ross, his wife, and certain other defendants. One of the remaining defendants is sued merely as the trustee in a deed of trust. The others, beside the Rosses, have defaulted. The Rosses filed a demurrer to the plaintiff's petition which was sustained by the trial court and she appealed to this court. The case was assigned to Division Two, which held the petition sufficient [Bragg v. Ross, 139 S. W. (2d) 491], and therefore reversed and remanded the cause. It was thereafter heard in the trial court upon bill, answer and proofs and a decree rendered for the defendants, from which the plaintiff has again appealed.

Prior to December, 1928, C. E. Bragg was the sole owner of a certain island in the Mississippi River, the title to which is here involved. In January of 1928 Mr. Bragg and his wife executed two deeds of trust on this real estate, the first was to M. E. ▓▓▓ Singleton of St. Louis, securing a note for $7500, the second to the First National Bank of Caruthersville, securing an indebtedness of $9500. In December, 1928, Mr. Bragg entered into a contract with the defendant, Charles G. Ross, in pursuance of which the Braggs deeded to Ross an undivided 4/5 interest in the island and also an undivided 4/5 interest in certain farm machinery and live stock located thereon. The consideration is not clearly stated in the deed and the statement of the consideration therein contained differs slightly from that given in the contract, but it appears to have included the assumption by Ross of certain items of indebtedness including the following: interest due February, 1929, on the Singleton note, $2000 of the principal of the bank note, and 4/5 of the principal of both the Singleton and the bank notes.

Neither of the two mortgage notes was paid and in 1931 Singleton requested the trustee to foreclose. The trustee under the deed of trust, a Mr. Litzelfelner, got in touch with Mr. Bragg and Mr. Ross and told them that Singleton was demanding payment. They requested Litzelfelner to go to St. Louis and attempt to obtain an extension of time from Singleton. Singleton then agreed that if Bragg and Ross would pay him $1500 in cash, together with accrued interest, he would

give them six months' extension. When this word was brought back to Bragg and Ross, the former stated to the trustee that he was not in a position to pay anything at all. Ross, however, paid $1500 and the accrued interest and secured the six months' extension. At the end of this period, payment was again demanded and Bragg told Litzelfelner that he was unable to pay anything at all. The latter then proceeded to advertise the property under the deed of trust and sold it. There is no evidence at all that Ross suggested such sale being made or did anything to encourage the foreclosure. At the trustee's sale Singleton bid for the amount then due on his note, was the highest bidder, and the property was stricken off to him. The trustee's deed was not immediately executed, however, and thereafter Ross and his wife approached Litzelfelner with reference to buying the land from Singleton. A new loan was arranged from a local bank for this purpose and, with the proceeds of the loan, the Rosses paid Singleton and at his direction a trustee's deed was made to Mrs. Ross. Neither of the Braggs signed this new note.

For sometime prior to the foreclosure sale Bragg had been in ill health, following a paralytic stroke. After this stroke he ceased to engage in the active practice of law but he did serve as a justice of the peace and conciliation commissioner in bankruptcy. The foreclosure sale took place in February, 1932. Mr. Bragg did not die until 1935, after another paralytic stroke. He left no children and his father and mother had predeceased him. The defaulting defendants are his collateral heirs. Shortly after his death the plaintiff made application to the probate court for a refusal of letters of administration and, upon a proper showing that Bragg left no estate beyond the amount of the widow's statutory allowances, such an order was made.

After Ross became a co-owner of the island with Bragg they continued to operate it as partners through tenants, and during the period when Bragg was partially incapacitated through illness Ross seems to have been chiefly in charge of its management. There is no evidence, however, of any fraud or dishonest dealing on the part of Ross, nor is there any evidence of collusion between Ross and Singleton with respect to the foreclosure of the mortgage, nor of any attempt to conceal from Bragg the subsequent purchase of the property by Mrs. Ross. There is evidence that immediately before Bragg's death he sent for Ross, saying that he wanted to talk to him about the island. At this time Ross answered that he would be glad to talk to Bragg when he was better, but Bragg did not recover and shortly thereafter died. The original theory upon which plaintiff proceeded in the trial court was that Ross, being a co-tenant of Bragg and in partnership with him, occupied a confidential relationship to him and hence was deemed to have purchased at the foreclosure sale as a constructive trustee for Bragg. In Hinters v. Hinters, 114 Mo. 26, 21

S. W. 456, this court said: "Tenants in common occupy a confidential relation to each other, and because of this relation there is an implied obligation on the part of each to sustain and protect the common title. It is, therefore, a general rule that if a tenant in common buy up an outstanding title or incumbrance, the purchase will be deemed to have been made for the benefit of all the co-tenants, the other co-tenants being bound, however, to contribute their respective proportions of the consideration paid for the outstanding title or incumbrance."

This rule is well illustrated by the case of Kohle v. Hobson, 215 Mo. 213, 114 S. W. 952. There the plaintiff and the wife of the defendant were heirs at law of Winifred Cole, who died intestate owning certain real property in Kansas City. At the time of the death of the intestate the property was subject to the lien of certain city taxes and was later sold under a procedure which seems to have been closely akin to that now followed under the Jones-Munger law. A certificate of purchase was issued to the highest bidder which, at the expiration of a two year redemption period, would entitle him to a collector's deed. The defendant purchased this certificate at private sale from the original holder. This court held that the defendant was to be treated exactly as his wife would have been had she purchased the certificate and that she, being an heir and therefore a co-tenant with the plaintiff, held equitable title under the certificate in trust for herself and the plaintiff, subject to a purchase money lien. Other cases applying the rule are: Morrison v. Roehl, 215 Mo. 545, 114 S. W. 981; Cockrill v. Hutchinson, 135 Mo. 67, 36 S. W. 375, 58 Am. St. Rep. 564; Meads v. Hutchinson, 111 Mo. 620, 9 S. W. 1111; Allen v. DeGroodt, 105 Mo. 442, 16 S. W. 494; Defreese v. Lake (Mich.), 67 N. W. 505; Phelan v. Boylan, 25 Wis. 679.

There is, however, an important and well-recognized exception to the rule. Where property is sold at public auction under a valid lien and the sale is not procured by action of the subsequent purchaser the co-tenant who purchases the paramount title is held not to hold the same in trust for his co-tenant. This is upon the theory that the sale being a public one, each of the co-tenants has an equal chance to bid. The leading case is that of Starkweather v. Jenner, 216 U. S. 524, 30 Sup. Ct. 382, 54 L. Ed. 602. Plaintiff owned certain lots in Washington, D. C., upon which he placed a mortgage. Thereafter he conveyed these lots to trustees for individuals who should subscribe to shares in a syndicate for the purpose of marketing them. Defendant purchased a beneficial interest under the trust and became an equitable co-owner. The mortgage on the land was foreclosed under a power of sale contained therein and the land sold at public auction, the defendant buying in the entire title. Plaintiff sought to have the court declare a trust in favor of himself and the other co-owners. However, the Supreme Court of the United States, although recognizing the gen-

eral rule as stated above, said: ''But it is plain that the principle which turns a co-tenant into a trustee who buys for himself a hostile outstanding title can have no proper application to a public sale of the common property, either under legal process or a power in a trust deed. In such a situation, the sale not being in any wise the result of collusion, nor subject to the control of such a bidder, he is as free, all deceit and fraud out of the way, as any one of the general public.'' A similar situation was before this court in the case of Dudgeon v. Hackley (Mo.), 182 S. W. 1004. Alexander Dudgeon, Sr., died intestate devising lands to his son Alexander, Jr., in entailment, charging them, however, with a payment of certain sums to other persons. The owners of these charges brought a foreclosure suit which resulted in a decree of sale. At such sale the life tenant purchased the fee. He then died without issue, devising the land to the defendant. Plaintiff was an heir of Alexander, Sr., and thus entitled to the reversion on failure of the entailed estate. Like the present plaintiff he claimed that Alexander, Jr., standing in a confidential relationship to the reversioners, had acquired fee simple title in trust for them; but this court, citing the Starkweather case, supra, held otherwise.

Therefore had the defendant Ross personally appeared at the foreclosure sale and publicly bid in this land, his purchase would not have created a constructive trust relationship between himself and the plaintiff. The evidence, however, does not show such a direct sale to the defendants. Although the trustee's deed was made to Mrs. Ross, the actual fact is shown to be that Singleton bought in the land and then resold to Mrs. Ross. However, the foreclosure sale at which Bragg had a chance to bid, but did not bid, effectively disposed of all of his title in the real estate, and at the time the trustee's deed was made to Mrs. Ross her husband and Bragg were not co-tenants. She acquired title therefor for herself alone and not in trust for Bragg.

It is contended by the plaintiff that Ross was actually in possession of the land during the interval between the foreclosure sale and the trustee's deed. Without passing ▮▮▮ upon the materiality of this fact we point out that the actual possession was in the tenant and not in either Bragg or Ross and that legal seizin passed from Bragg and Ross at the time of the foreclosure sale. If it be contended, however, that legal seizin did not pass until the trustee's deed was made, then Mrs. Ross' purchase was in fact a purchase at the foreclosure sale, and under the rule of the Starkweather case could not be held to be a purchase in trust for her husband's co-owner. The trial court therefore properly held that no constructive trust here existed.

▮ Plaintiff contends now that even though she is not entitled to relief upon the theory of a constructive trust, she is entitled to a vendor's lien against the premises. It is well recognized that where

one party sells real estate to another for a definite consideration which is not paid and where the vendor does not take from the vendee a mortgage or other specific security for the purchase price, equity will create a lien in favor of the vendor against the property sold. [Sloan v. Campbell, 71 Mo. 387, 36 Am. Rep. 493; 27 R. C. L. 568.] Such a lien is not terminated by the death of the original vendor but it descends to his personal representatives, legatees or next of kin. [Wellborn v. Williams, 9 Ga. 86, 52 Am. Dec. 427; Tiernan v. Beam, 2 Ohio, 383, 15 Am. Dec. 557.] The doctrine of implied vendor's liens applies to real estate but not to personalty. [27 R. C. L. 571.] For this reason some confusion has arisen in cases like the present where both real estate and personal property are sold at the same time for a consideration not apportioned between them. Some authorities hold that in such cases no lien can be asserted. [Parrish v. Hastings (Ala.), 14 So. 783, 48 Am. St. Rep. 50; Peters v. Tunell (Minn.), 45 N. W. 867, 19 Am. St. Rep. 252.] Other cases permit the enforcement of the lien under such circumstances. [Doty v. Deposit Building Association (Ky.), 46 S. W. 219, 43 L. R. A. 551; Zeiser v. Cohn, 207 N. Y. 407, 101 N. E. 184, 47 L. R. A. (N. S.) 186.] We refrain, however, from expressing an opinion as to the correct rule in these cases because in the view we take of the case the decision of the question will be unnecessary.

Assuming, for the sake of argument, that Bragg did have a vendor's lien against Ross' 4/5 interest in this land at the time of the original deal from Bragg to Ross. Such lien was extinguished by the foreclosure sale. The implied vendor's lien could not have any greater force or effect than a mortgage. If Bragg had taken back a purchase money mortgage from Ross it would have been a third lien junior to the Singleton mortgage (first lien) and the bank mortgage (second lien). When the first mortgage was foreclosed all junior encumbrances were thereby extinguished and the title passed to Singleton free and clear and thereafter his title vested in Mrs. Ross.

Nor can it be argued that equity should revive or keep alive the original vendor's lien after the foreclosure sale because of the failure of Ross to perform his obligation of paying off a portion of these prior debts. Ross was under no duty to pay off more than the particular portion of the two debts which he assumed. Had he paid everything he owed to Singleton the Singleton mortgage might still have been foreclosed because of the failure of Bragg to pay his part. The evidence shows that Bragg not only did not pay his part but could not have done so, and that he stated to the trustee that he was not in a position to pay anything. Furthermore, payment to Singleton by Ross would have left the general mortgage in full force and effect as a lien superior to Bragg's lien. Hence Bragg was not injured by Ross' failure to pay his part of the Singleton indebtedness. We

therefore hold that no vendor's lien now exists in favor of Mrs. Bragg against this land.

It is claimed by plaintiff that she is entitled to an accounting for the personal property sold to Ross in connection with the sale of the real estate. The petition is not carefully drawn but it apparently states facts entitling plaintiff to such accounting. The evidence tends to show that Bragg and Ross operated the farm as partners from 1928 to 1932 and that the personal property mentioned constituted part of the partnership assets. From and after the foreclosure sale the partnership was dissolved. It is also shown in evidence that at least during the latter part of the partnership the active management of affairs was carried on by Ross. It is true that the answer pleads that the partnership lost money during this period and was actually indebted for more than $9000. This allegation was not denied by a reply, but since it is in effect a mere denial of charges made in the bill, a reply was unnecessary and there is no proof of the allegation so made. Ross, although an incompetent witness in his own behalf for most purposes, might have identified the original books of the partnership, but he did not do so. Furthermore the bill prays an accounting of all of the partnership affairs during its continuance. As we have seen, the partnership ceased to exist in 1932 and from and after the foreclosure sale the land was the sole property of Mrs. Ross. But up to that time Ross and Bragg were partners and the plaintiff, as Bragg's widow, entitled to statutory rights in his personalty, is entitled to have an accounting covering: (a) the profits and losses of the partnership prior to the foreclosure sale, and (b) the personal property, an interest in which was sold to Ross but which was not covered by the Singleton deed of trust.

Defendants say, however, that any rights of the plaintiff are barred by her laches. The right to an accounting accrued as of the date of the foreclosure sale in 1932. The present action was brought in 1937. However, the evidence tends to show that during the period from 1932 until his death Mr. Bragg, although he was certainly not mentally incompetent since he was able to hold the offices as justice of the peace and conciliation commissioner, was nevertheless in such weakened mental and physical condition that it was difficult for him to carry on ordinary business. The evidence further shows that there was no definite denial by the defendants of his rights during this period and he, no doubt, was relying upon the Rosses to make settlement at the proper time. Under the circumstances we do not feel that Mr. Bragg nor the present plaintiff have been guilty of such laches as to bar action for an accounting.

It follows, therefore, that the judgment of the trial court should be reversed and the cause remanded with directions to order an accounting to be taken between the plaintiff and the defendants as to the two classes of items previously mentioned in this opinion. If,

upon the taking of the account, it should appear that the partnership between Bragg and Ross actually continued until a later date than the date of the foreclosure sale, the accounting taken by the trial court should include the items of debit and credit to the actual determination of the partnership. It is so ordered. All concur.