**Hazel Duncan RIDENOUR, Joyce Snyder and Raymond Duncan, Respondents,**

**v.**

**Nathaniel Wade DUNCAN, Administrator de bonis non of the Estate of Robert Earl Duncan, Deceased, Nathaniel Wade Duncan, Administrator of the Estate of Florence Duncan, Deceased, Eliza W. Herod and Elmer J. Fults, Appellants.**

**No. 44903.**

Supreme Court of Missouri.

Division No. 2.

June 11, 1956.

Motions for Rehearing or to Transfer to Court En Banc Denied
July 9, 1956.

Clarence C. Chilcott, Earl Dietz, Kansas City, for appellant Nathaniel Wade Duncan.

Jay L. Oldham, Kansas City, for appellant, Eliza W. Herod.

Myer M. Rich, Isadore Rich, Rich & Rich, Kansas City, for respondents, Anthony J. Miceli, Lawrence W. Saeger, Kansas City, of counsel.

BOHLING, Commissioner.

Hazel Duncan Ridenour, Joyce Snyder and Raymond Duncan sued Robert Earl Duncan and Florence Duncan, husband and wife, and Eliza W. Herod and Elmer J. Fults to cancel certain deeds conveying the property commonly known as 907 Prospect avenue, Kansas City, Missouri, a five-apartment building, and all the furniture and furnishings therein, and a deed of trust thereon, and asked, claiming an undivided one-half interest therein, title be decreed and for general equitable relief. A prior appeal, affirming an order granting plain-

tiffs a new trial, is reported at 246 S.W.2d 765.

Plaintiffs contend Mrs. Goodwin, their paternal grandmother, died seized and possessed of the property involved and they have an undivided one-half interest therein. Defendants Duncan claim the title stood in the names of Robert Earl Duncan and Florence Duncan as a gift at the time of Mrs. Goodwin's death. Mrs. Herod, claiming she was a bona fide purchaser from the Duncans, asked that title be decreed, prayed general equitable relief, and joined with her answer a cross-claim against her codefendants asking $6,000 damages. These issues were tried. The chancellor found for the plaintiffs and defendants have appealed.

Minnie Duncan Goodwin was twice married. Her only children were Sidney Earnest Duncan and Robert Earl Duncan, known in the record as "S. E." or "Earnest," and "Earl," respectively; and her sons were named as beneficiaries in equal shares in a will offered in evidence.

Upon suggestions of deaths following the submission of the case, Nathaniel Wade Duncan, administrator de bonis non of the estate of Robert Earl Duncan, deceased, was substituted as a party defendant for said deceased, and Nathaniel Wade Duncan, administrator of the estate of Florence Duncan, deceased, was substituted as a party defendant for said deceased.

S. E. Duncan died July 3, 1947, predeceasing his mother. Plaintiffs are his only children and heirs.

Mrs. Goodwin died about 3:00 a.m. March 18, 1949.

The chancellor, under the evidence hereinafter narrated, found that Minnie Duncan Goodwin was the owner at her death of the property involved; that Elmer J. Fults, who held the record title, was a straw person, having no interest in the property; that Mrs. Goodwin did not in her lifetime make a gift of the property to defendants Robert Earl Duncan and Florence Duncan; that at Mrs. Goodwin's death the property descended and vested in plaintiffs, a one-half interest, and in defendant Robert Earl Dun-can, a one-half interest; that, following Mrs. Goodwin's death, the defendants Duncan undertook to convey the property to defendant Eliza W. Herod (the consideration being $4,400); that defendant Herod was not a bona fide purchaser of the property; that Robert Earl Duncan expended $810 clearing the title to the property and plaintiffs stand indebted to said defendant in the amount of $405; that defendant Herod should have paid defendants Duncan $2,200 for an undivided one-half interest in the property but had actually made overpayments to said grantors, and that there is due said Herod from said Duncans $1,400. The decree conformed to said findings, and dismissed the claims against defendant Fults.

The record on the first appeal established that about June 6, 1947, the record title was put in the name of Fults, a straw person, who thereupon executed and delivered a warranty deed with the grantee's name in blank to Era Bond for Mrs. Goodwin; that after the death of Mrs. Goodwin the names of Robert Earl Duncan and Florence Duncan were inserted in said deed as grantees and the deed was thereafter delivered to Mr. Duncan. 246 S.W.2d loc. cit. 767–769.

Era Bond, a real estate agent, handled all the transfers involved. He was called to the stand by plaintiffs in the instant trial. He was defendant's witness at the first trial. There is some conflict in his testimony at the two trials. The determinative events occurred in March and April, 1949—Mrs. Goodwin's death; Fults-Duncans transaction; Duncans' power of attorney to Bond; Duncans-Herod transaction; the attorney's opinion on the title for defendant Herod. Plaintiffs' petition was filed April 12, 1949. The first trial was in December, 1949. The instant trial was in November, 1952. Asked his age at the instant trial, Bond answered: "Eighty some, I don't know." He testified he did not remember certain matters he testified to at the first trial, that three years had passed; that he remembered at the first trial "as that was pretty close to the time that it was done"; that his "memory then was better than it is now"; "Q. And what you said then was true? A. Well, I hope so.

I think so. Q. Well was it? A. I think so, yes."

As stated on the first appeal and not developed in detail here, 246 S.W.2d 767, 2d col., Mrs. Goodwin and S. E. Duncan, through Bond, purchased the property for $5,750 on October 26, 1946, taking title in S. E. Duncan. We understand $3,000 was paid down, Bond loaning Mrs. Goodwin $200 and S. E. paying $450. On the same day S. E. Duncan gave back a note for $2,750, payable $30 monthly, secured by a deed of trust on the property, and executed, acknowledged, and delivered to Mrs. Goodwin a warranty deed to the property with the name of the grantee in blank. Mrs. Goodwin, with her husband, lived in one of the apartments. She collected the rents, managed the property and made the payments credited on the note during her lifetime.

The title, according to the record, was kept out of the name of Mrs. Goodwin to deprive her husband, Henry W. Goodwin, of any marital rights in the property should she predecease him.

S. E. Duncan was not well. Mrs. Goodwin received a telegram June 6, 1947, from the Chief Medical Officer, Wadsworth, Kansas, stating that Sidney was seriously ill. Bond, after questioning, testified he remembered Mrs. Goodwin brought the telegram in on June 6, 1947, said Sidney could not hold out long and " 'I have got to change that property,' " and that immediately Elmer J. Fults was named as grantee in S. E. Duncan's deed. S. E. Duncan's deed to Fults was recorded June 6, 1947. Fults executed and delivered his warranty deed "right back," conveying the property with the grantee in blank, and the deed was put in Bond's safe. Fults was paid $5.

There is testimony from Bond that he testified at the first trial he last saw Mrs. Goodwin when she made a payment on the note (the last credit before her death is dated "3–1–49"), and she said: " 'I think you just as well put Earl Duncan's name on that deed.' I said 'All right.' She said, 'If anything happens could you get another deed? If I should sell that place, could you get another deed from Fults?' I said, 'I think so. I have already paid him,' and at that date I think I put Earl Duncan's name on the deed"; but that this testimony was not all true, because he did not fill in the grantees' names.

At the instant trial Bond testified that he stated at the first trial he held Fults' deed in his safe from June 6, 1947, until March 17, 1949; that he had studied about the matter and Mrs. Goodwin "come to me and asked for the envelope that held the deed in blank"; that he got the envelope with the deed out of the safe, gave it to her, and she took it out, and also "I didn't know it was gone" until she brought it back; that this was two weeks to a month before she died; that he could not state the day she got the deed or returned it; that after a couple of weeks she returned the deed in a sealed envelope with Earl Duncan's name on the envelope; that Mrs. Goodwin was in his office the day before she died, and that Mrs. Goodwin brought the deed back a week or ten days before she died. When Mrs. Goodwin returned the deed, it was placed in his safe, where it remained until he delivered it to Earl Duncan, whom he had never seen before, the day or the day after she died. Bond testified the notary inserted the grantees' names in the deed.

Pressed as to when the grantees' names were put in the Fults deed, Bond answered he was not sure whether it was after Mrs. Goodwin died or the day before she died. Asked if he testified at the first trial: " 'Q. When was the grantees' name put in this deed? A. When I notified him [Earl Duncan] after his mother died' "; and whether his answer was true, he stated: "A. Well, it was true what I swore to." And later, asked if he testified at the first trial:

" 'Q. Was his mother living then? A. She was dead.' A. That is right.

"Q. That's what you said? A. Yes.

"Q. (reading): 'Q. She was dead? A. It was a couple of days after her death.' Is that right? A. I think it was.

"Q. And that was the truth? A. I think it was."

A letter of January 9, 1948, from Mrs. Goodwin to Mr. and Mrs. Earl Duncan, so far as material, stated: "* * * dear children for my sake don't ever speak of this for it would make trouble for me with my grandchildren as well as my husband. I am leaving everything to you son if I have any thing at my death and truly hope I have. * * *".

Mrs. Mary Scott and Mrs. Addie Collier gave testimony that Mrs. Goodwin told them the property was to go to Earl Duncan.

Earl Duncan testified in substance as follows: The property was a gift from his mother. The first he knew she intended leaving it to him was her letter of January 9, 1948. He did not know about her business affairs, or discuss this property with her, or talk to her about giving it to him. For a year prior to her death she told him the property was in his name and he could pick up the deed at Bond's office at any time, the last time being about March 8, 1949. He could not explain how the Fults deed happened to be dated and acknowledged on March 17, 1949. He never met Bond until the afternoon of March 18, 1949, following his mother's death that morning. The deed was in a sealed envelope with his name on it. He opened the envelope. The names of the grantees were not in blank. This was the first he actually knew the deed was to him and his wife. So far as he knows it is not true that his name and his wife's name were inserted after his mother's death.

The Fults deed, delivered June 6, 1947, shows March 17, 1949, for the dates of execution and acknowledgment. It was recorded March 26, 1949. A printed form was used. None of the blanks for "part ―― of the second part" or for "―― heirs" etc. are filled in.

Earl Duncan made no inquiry as to the value of the property. He did not know what his mother paid for it. The real estate market was advancing but he wanted to sell the property and "didn't care how much it was worth." When Bond told him it was not worth over $3,800, he authorized Bond to sell.

On March 25, 1949, Bond, as attorney in fact for Earl and Florence Duncan, contracted with Eliza W. Herod for the sale and purchase of the property for $4,400, acknowledging receipt of $2,200 cash and the buyer agreeing to execute a $2,200, 6% note, payable $30 monthly, secured by a deed of trust. The seller was to furnish the buyer an abstract of title and the money was to be held in escrow until the title was approved by the buyer. Bond was the escrow agent.

On March 26, 1949, Earl and Florence Duncan executed a general power of attorney authorizing Era Bond to sell the property for $3,800.

The deed from the Duncans to Mrs. Herod gives March 18, 1949, as the date of execution. It shows an apparent effort to change the date of the acknowledgment from "18" to "28" of March, 1949. It was recorded March 31, 1949.

Mrs. Herod's note and deed of trust are dated March 29, 1949, recorded March 31, 1949.

Neither Bond nor Earl Duncan could account for the several discrepancies in the dates on the instruments involved. Harry W. Durall, who acted as notary, and Elmer J. Fults were not called as witnesses.

Mrs. Herod, who was present in court, refused to take the stand, counsel stating, on the advice on her physician. Her former testimony was offered. She had known Bond for four or five years. She saw the property advertised, and Bond took her to see it. She asked Bond the price. He asked $4,400, and she purchased it. Before the deal was closed she met Mr. Goodwin while inventorying the furniture and found out he was Mrs. Goodwin's widower, but she did not talk to him. "Q. You never did try to find out the status of Mr. Goodwin, is that right? A. I didn't go into court to find out. I asked; after I found out who he was I asked Mr. Bond. He said, 'You needn't worry about him.' He says it never did belong to him'"; that she had no worries, and that it was up to Mr. Duncan to see that the deal was

all right. She stated she was not previously acquainted with the Goodwins or Duncans, and did not know Mrs. Goodwin owned the property. She was buying from Mr. Duncan, and did not know from whom he got the property.

Bond testified that Mrs. Herod and he inventoried the furniture prior to March 25, 1949, and he introduced Mrs. Herod to Mr. Goodwin, who occupied an apartment; and that he told Mrs. Herod that Mrs. Goodwin was the mother of Earl Duncan when they met to close the transaction.

Mrs. Herod testified Bond had the abstract of title examined for her. The opinion of Harry W. Durall, lawyer, dated April 2, 1949, without going into detail, approved the title. The opinion has the following postscript: "The name of Henry W. Goodwin does not appear in this abstract in any way. H. W. D."

Bond testified that Mrs. Herod bought the property on the strength of the opinion approving the title, and that the Duncan-Herod transaction was closed following the letter of April 2, 1949, when Earl Duncan received his part of the cash payment, etc.; and Mrs. Herod received her deed.

Earl Duncan paid Bond $360, which Bond claimed Mrs. Goodwin owed (there was testimony she owed $260), and an encumbrance against the property of $350. He paid Mrs. Goodwin's funeral expenses, amount not stated. He also paid Mr. Goodwin, who had sued Earl Duncan and his wife and Mrs. Herod on April 7, 1949, $200 to release his marital rights, and Mr. Goodwin executed a quitclaim deed, dated September 20, 1949, in which Mrs. Herod was named grantee.

Defendants Duncans' first two points are that "there was not a scintilla of evidence" that the Duncans practiced any fraud upon anybody, and that Fults' deed conveyed a fee-simple title to the Duncans.

 Defendants argue plaintiffs seek to recover on Bond's testimony at the previous trial, and that his failure to recall particular facts did not authorize the admission of his testimony of the former trial thereon, stressing Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 463, 129 A.L.R. 829. In the Turner case the witness was not present at the second trial. His deposition had been taken between the first and second trials, but he was forgetful and questions and answers from the transcript were read to fill in gaps in the deposition. That is not this situation. Bond testified in court and the chancellor could find from his examination that he reaffirmed his previous testimony on material facts upon having his attention directed to it. Defendants' statement is too broad, Turner case, 142 S.W.2d loc. cit. 464. Pulitzer v. Chapman, 337 Mo. 298, 85 S. W.2d 400, 411 [7, 10], states, in effect, that the trier of the fact has the right in the light of all the evidence, to find which of contradictory versions of the facts, that given by deposition or that given at the trial, is correct, indicating that as between conflicting testimony at different trials, the earlier testimony should carry greater weight, being fresher in the mind when given. Snowwhite v. Metropolitan Life Ins. Co., 344 Mo. 705, 127 S.W.2d 718, 721; 31 C.J.S., Evidence, §§ 399 a, 402 a, pp. 1205, 1209. Section 492.410 RSMo 1949, V.A. M.S., authorizes the use of evidence preserved in a bill of exceptions as if preserved in a deposition. The Turner case, supra. Here, as stated, Bond reaffirmed his previous testimony.

All the evidence is that Fults was a straw person, without any beneficial interest in the property, and was never vested with any power in respect to the deed.

 The chancellor could find from Bond's testimony that the names of the grantees were inserted in the Fults deed after Mrs. Goodwin's death, and all the evidence is that the deed was not delivered to Earl Duncan until after her death. Under the ruling in Holliday v. Clark, Mo., 110 S.W.2d 1110, Mrs. Goodwin, the beneficial owner, had authority to complete the deed by filling in her own name and becoming the legal owner; any authority disclosed by the record conferred by Mrs. Goodwin upon any agent to act for her terminated

with her death; and the unauthorized filling in of the names of the grantees and the delivery of the Fults deed to the grantees after her death did not constitute a completed gift inter vivos and did not pass title to Earl and Florence Duncan, the named grantees. Ridenour v. Duncan, Mo., 246 S.W.2d loc. cit. 769, 770. When the death of Mrs. Goodwin terminated the authority to insert the names of grantees in the Fults deed, the unauthorized alteration of said deed was for the purpose of giving the grantees an improper advantage and was prima facie a fraud in law. Whitmer v. Frye, 10 Mo. 348, 350; McCormack Harvesting Mach. Co. v. Blair, 146 Mo.App. 374, 385, 124 S.W. 49, 52; Law v. Crawford, 67 Mo.App. 150, 153; 3 C.J.S., Alteration of Instruments, §§ 16 b, 49, note 65, pp. 919, 964.

■ There was also substantial evidence supporting a finding that Mrs. Goodwin retained dominion over the deed and made no unconditional delivery of a completed deed during her lifetime. When she made her last payment on the note, March 1, 1949, she was concerned if Earl Duncan's name were inserted as grantee and she sold the property if she could secure another deed from Fults, and was assured by Bond that she could. If Mrs. Goodwin told Earl Duncan on March 8, 1949, and for a year prior thereto, that the property was in his name and he could pick up the deed at any time and if she took the blank deed from Bond's office a month before her death and returned it in a sealed envelope to Bond a week or ten days before her death, the envelope not being opened until after her death, March 18, 1949, there is no way to account for the deed being dated and acknowledged on March 17, 1949. This is not a case wherein the owner parted with his dominion over and effectively delivered a completed deed during his lifetime, as are the authorities stressed by defendants. Blackiston v. Russell, 328 Mo. 1164, 44 S.W. 2d 22, 24, 26; Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31, 35, 36 [6, 7], 33 A.L.R. 2d 1431. See, among other, Ridenour v. Duncan, supra; Cleary v. Cleary, Mo., 273 S.W.2d 340, 343, 345 [5-9, 14].

The defendants Duncan make the point: "The court erred in rendering judgment for the plaintiffs because it had no jurisdiction to render the particular judgment rendered in this case." This is followed by twenty-two citations. Defendants do not set out in their point wherein or why the court was without jurisdiction. There is no particularization of error or why the error existed. Consult 42 V.A.M.S. Supreme Court Rules, rule 1.08; Berghorn v. Reorganized School Dist. No. 8, 364 Mo. 121, 260 S.W.2d 573, 580 [3-6]; Gelhot v. Stein, Mo., 174 S.W.2d 174; Aulgur v. Strodtman, 329 Mo. 738, 46 S.W.2d 172, 173 [3, 4].

The court had jurisdiction of the parties and the subject matter. The gist of plaintiffs' petition was that Mrs. Goodwin was the owner of the property at her death; that the plaintiffs had a one-half interest and defendant Robert Earl Duncan had a one-half interest in the property; that the Fults deed and the Duncan deed and the Herod deed of trust were of no force and effect against plaintiffs' interest, and that the title be decreed and for general equitable relief. These issues were tried and the chancellor adjudged the title, adjusting the equities between all the parties. Consult Section 509.500 RSMo 1949, V.A. M.S. If, as the trial court considered, the names of the grantees were inserted in the Fults deed and said deed was delivered to said grantees after Mrs. Goodwin's death, such action constituted a legal fraud upon plaintiffs' interests in the property. Earl Duncan testified he paid Mrs. Goodwin's funeral expenses, but did not state the amount.

■ When Earl Duncan paid his stepfather $200 to release his interest in Mrs. Goodwin's estate, Mr. Goodwin executed a quitclaim deed to Eliza W. Herod, who paid no part of the consideration. We have considered that as between coheirs or codevisees a relation of trust and confidence exists, binding all to protect the common interest in the property involved; and we find nothing in defendants' authorities making it improper for the chancellor to treat the securing of the release of Mr. Good-

win's interest in the property by Earl Duncan, as well as his protecting the property by other payments following Mrs. Goodwin's death, to have been for the benefit of all cotenants upon the contribution of their respective portions of the consideration within a reasonable time. Siela v. Kneib, Mo., 176 S.W. 1052, 1054 [2]; Bragg v. Ross, 349 Mo. 511, 162 S.W.2d 263, 265 [1]; Hinters v. Hinters, 114 Mo. 26, 29(1), 21 S.W. 456, 457(1); Freeman on Cotenancy and Partition, 2d Ed., §§ 151, 156.

A court of equity, under a prayer for general equitable relief, Marston v. Catterlin, 290 Mo. 185, 234 S.W. 816, 817 [1–4]; Rains v. Moulder, 338 Mo. 275, 90 S.W.2d 81, 85 [9]; Hallauer v. Lackey, 353 Mo. 1244, 188 S.W.2d 30, 34 [7], is authorized to adjust the rights of the parties as established by the evidence.

The judgment decrees the title to the property. It does not partition the property as defendants argue.

Defendants' authorities do not establish error.

Defendants Duncan invoke the rule that equity will not aid one who comes into court with unclean hands. We are in accord with defendants' cases holding a voluntary transfer of property by a husband or wife with intent to deprive the other of marital rights constitutes a fraudulent transfer, Hach v. Rollins, 158 Mo. 182, 59 S.W. 232 [1, 2]; Headington v. Woodward, Mo., 214 S.W. 963 [2, 3]; Noe v. Noe, 359 Mo. 867, 224 S.W.2d 77 [1]; and that neither the grantor nor the grantor's heirs, privies in estate, may successfully invoke the aid of a court of equity to enforce or undo the corrupt transaction. La Rue v. La Rue, 317 Mo. 207, 294 S.W. 723, 726 [1–4]; Stierlin v. Teschemacher, 333 Mo. 1208, 64 S.W.2d 647, 652 [1, 2], 91 A.L.R. 121, stressed by defendants. Defendants' cases differ from the instant case in that the several grantors executed and delivered deeds effectively vesting the title according to the terms of the respective deeds in a third party. In the instant case following the actual execution and delivery of the Fults deed on June 6, 1947, with the grantee's name in blank, up to the time of Mrs. Goodwin's death, she had authority to complete the deed and become the legal owner by filling in her name as grantee. Holliday v. Clark, Mo., 110 S.W.2d 1110, 1111 [2]. See Church v. Combs, 332 Mo. 334, 58 S.W.2d 467, 469 [3, 5]. Under the evidence favorable to plaintiffs whatever moral turpitude attached to Mrs. Goodwin's intentions with respect to her husband's marital rights was never legally consummated. The intended but incompleted fraud of Mrs. Goodwin was insufficient to preclude plaintiffs from seeking relief in a court of equity. Bante v. Bante Development Co., Mo.App., 27 S.W. 2d 481, 486 [4, 5]; Butte Inv. Co. v. Bell, Mo., 201 S.W. 880, 886 [3, 4]; Annotation, 4 A.L.R. 58, 59. Mrs. Goodwin ceased to exist with her death and the law transmitted her interests in accordance with the statutes of descent or her will. The chancellor could and did find that whatever fraud was practiced occurred after Mrs. Goodwin's death. Unauthorized alterations or the destruction of a deed conveying title do not defeat the owner's title. Defendants' contention is overruled.

Defendant Herod presents two points. As hereinbefore stated the first contention, i. e.: that plaintiffs cannot have a decree for partition, is without merit as no decree of partition was entered.

Said defendant's other point is that the court erred in finding she was not a bona fide purchaser.

As defendant Herod states: A deed operates from the time of delivery. Eld v. Ellis, Mo., 235 S.W.2d 273, 276 [7]. In the absence of evidence, a presumption exists that a deed was delivered on the date of its acknowledgment or the date of its recording; but these presumptions are presumptions of fact which may be rebutted by evidence showing the true date of delivery. Osage Inv. Co. v. Sigrist, 298 Mo. 139, 250 S.W. 39, 41 [4]; Breshears v. Breshears, 360 Mo. 1057, 232 S.W.2d 460, 462 [1, 2]. In the instant case the contract under which

Mrs. Herod purchased expressly provided that the $2,200 down payment was "to be held in escrow until title is approved by buyer"; and the evidence established that the transaction was not closed and, hence, the deed was not operative until after the attorney's opinion on the title was received, which was April 2, 1949.

Plaintiffs agree with defendant Herod that with respect to land: " 'The essential elements which constitute a bona fide purchaser are * * * three—a valuable consideration, the absence of notice, and the presence of good faith.' " McAboy v. Packer, 353 Mo. 1219, 187 S.W.2d 207, 209 [1], quoting 3 Pomeroy, Equity Jurisprudence, p. 20, § 745; 92 C.J.S., Vendor & Purchaser, §§ 323 f, 353, pp. 230, 291.

Woodbury v. Connecticut Mut. Life Ins. Co., 350 Mo. 527, 166 S.W.2d 552, 554 [4, 6], while holding a purchaser of realty is not under a duty of making inquiry for defects in the vendor's title of persons in possession as tenants of the vendor, recognizes that one purchasing land with knowledge from any source which should reasonably put him on inquiry for defects in the vendor's title, is charged with such knowledge as he would naturally gain by making such inquiry. See also Rudisaile v. De Beughem, 361 Mo. 917, 237 S.W.2d 166, 168; Squires v. Kimball, 208 Mo. 110, 119, 106 S.W. 502, 504.

 Mr. Goodwin's possession of "furniture and furnishings" conveyed to Mrs. Herod by the deed of the Duncans and covered in her contract of purchase was a strong indicium and prima facie evidence of Mr. Goodwin's title, and put Mrs. Herod upon inquiry and charged her with notice of the results of such inquiry. Goddard Grocer Co. v. Freedman, Mo.App., 127 S.W.2d 759, 762 [5–7]; Moore v. John J. Dowling Realty Co., Mo.App., 186 S.W.2d 519, 522 [2–4]; Eisenberg v. Nelson, Mo.App., 247 S.W. 244, 247 [4, 5]; 77 C.J.S., Sales, § 289 c, f(2), p. 1087.

 The chancellor could find that Bond quoted a price of $4,400, and Mrs. Herod purchased without negotiating over the price; and that she purchased in a rising market paying $1,350 less than the property sold for three years before. She paid one-half of the purchase price to an escrow agent and executed her note and deed of trust securing the balance due before the title was approved. The deed to Mrs. Herod recites that the property is conveyed "as her sole and separate property, and not subject to any marital rights." Mr. Goodwin was in possession of an apartment and of "furniture and furnishings" within her deed. She was introduced to him and testified that after she found out who he was she asked Bond about him; but she did not talk to Mr. Goodwin. If she thought the Duncans owned the property, there was no reason for mentioning Mr. Goodwin in the title opinion. She must have had knowledge of his interests as her lawyer's opinion stated in a postscript: "The name of Henry W. Goodwin does not appear in this abstract in any way." Mr. Goodwin's interest arose from Mrs. Goodwin's ownership. Fults was a straw person if Mrs. Goodwin owned the property. "Real estate transactions made through straw men and ghosts should always be viewed with suspicion." Ryan v. Stubblefield, Mo., 100 S.W.2d 444, 446; Conrad v. Diehl, 344 Mo. 811, 129 S.W.2d 870, 877 [12, 13]. We conclude the facts and circumstances permitted questioning Mrs. Herod's good faith, and that the chancellor could infer that reasonable and timely inquiry by Mrs. Herod would have revealed that Fults was a straw person for Mrs. Goodwin; that Fults' deed to the Duncans was delivered after Mrs. Goodwin's death and, also, that the grantees' names were inserted therein after her death. Mrs. Herod was put upon inquiry and we are not inclined to disturb the findings of the chancellor on the record made.

Plaintiffs filed a motion to dismiss Mrs. Herod's appeal for failure to comply with our rules. Let it stand overruled without prejudice.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.